SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized).

**State v. Michael Ross II** (A-67-12) (072042)

**Argued January 6, 2014 – Decided June 24, 2014 – Corrected July 3, 2014**

**PATTERSON, J., writing for a majority of the Court.**

In this appeal, the Court considers when a trial court may instruct jurors to resume deliberations and attempt to reach a verdict after learning that the jury was deadlocked and whether a trial court may seat an alternate juror to begin new deliberations after a juror on a previously deadlocked jury becomes ill.

On October 30, 2003, two men were shot and killed while sitting in a parked car. Defendant was indicted for two counts of first-degree murder and related offenses, including hindering apprehension. He proceeded to a jury trial in April 2008. The jury deliberated for several days, but stopped several times to communicate with the court. Two of those interruptions are at issue on appeal. The first occurred on the fifth day of deliberation when the jury advised the court that it could not reach a unanimous decision on any count of defendant's indictment. The court directed the jury to resume deliberations and to try to reach an agreement. The second occurred when, after deliberating for several more hours, the jury informed the court that Juror No. 5 was sick. When the trial judge asked Juror No. 5 about her condition, she confirmed that she had a headache and was nauseous. The trial judge dismissed her for the day, but told her to call the court in the morning if she was unable to report. The next morning, after Juror No. 5 confirmed her illness, the judge excused her from further participation in the trial.

Finding that the jury had not yet made any factual findings or drawn any conclusions about defendant's guilt or innocence, the trial judge directed the clerk to randomly select an alternate. Both the prosecutor and defense counsel confirmed on the record that they had no objection to the court seating an alternate. Once the alternate was selected, the court advised the jurors to set aside any statements made in deliberations prior to the departure of the excused juror and to disregard any opinions that juror may have expressed. The reconstituted jury commenced deliberations on April 23, 2008 and, after deliberating for more than sixteen hours over the course of four days, announced that it had reached a verdict. The jury convicted defendant of all of the charges.

In an untimely motion for a new trial, defendant objected to the substitution of the juror and claimed that the court should have ordered a mistrial. The trial court denied defendant's motion. The court sentenced defendant to consecutive terms of life imprisonment on each of the murder convictions, and a five-year term of incarceration, to run consecutively to defendant's two terms of life imprisonment, on the hindering apprehension charge. An Appellate Division panel reversed defendant's conviction and remanded for a new trial, holding that the trial court's post-deadlock substitution of a juror constituted plain error. The panel construed the original jury's declaration that it could not reach a verdict to strongly suggest that some jurors had made up their minds about the case, and were thus incapable of starting new deliberations.

The State filed a petition for certification, and the Appellate Division stayed its judgment pending the determination of the State's petition. This Court granted certification. 214 N.J. 118 (2013).

**HELD**: Where there was nothing in the jury's communications with the trial court to suggest that any juror had reached a determination on a factual or legal issue, the trial court's decision to instruct the deadlocked jury to continue deliberations and attempt to reach an agreement, and to later substitute an alternate for an ill juror after the deadlock had been announced, did not constitute plain error.

1.   Since defendant did not object to the trial court's decision to instruct the jury to continue deliberations after reporting the deadlock, or to its decision to substitute an alternate for an ill juror, the standard of review is plain error. Plain error is any error or omission that is of such a nature as to have been clearly capable of producing an unjust result. (pp. 11-12)

1

2.    Once the jury expressed that it could not reach a unanimous decision, the trial court properly admonished the jurors to deliberate with a view to reaching an agreement, to independently decide the case after an impartial consideration of the evidence with fellow jurors, and to re-examine and change individual views if they are erroneous. (p. 13)

3.    A jury verdict must not be the product of coercion. Here, the jury did not signal an intractable divide that required declaration of a mistrial. The trial court properly exercised its discretion in response to the jury's communication of an impasse by providing the charge and directing the jury to resume deliberations. (pp. 14-16)

4.    Rule 1:8-2(d)(1) sets forth the procedure for the substitution of an alternate juror for a juror who "dies or is discharged by the court because of illness or other inability to continue." The trial court must appraise the impact of a juror substitution on the jury process without tainting that process with intrusive questions and must distinguish between reasons that are personal to the juror, which may permit a substitution under the rule, and issues derived from the juror's interaction with the other jurors or with the case itself, which may not. (pp. 17-18)

5.    Physical illness, emotional condition, and financial hardship have each been recognized as a basis for removal and replacement of a juror, but if a request to discontinue service also relates to factors arising from the juror's interactions with the other jurors, discharge from further service constitutes an abuse of discretion. (pp. 19-20)

6.    The trial court should consider whether a reconstituted jury will be in a position to meaningfully evaluate and discuss the case. The court should consider the timing of the juror's departure, the explanation of the problem prompting the inquiry, and any communications from the jury that may indicate that deliberations have progressed to the point at which a reconstituted and properly charged jury will be unable to conduct open and mutual deliberations. (pp. 21-23)

7.    The trial judge should conduct a cautious inquiry of the juror and direct the juror not to reveal confidential jury communications. Then, the trial judge may consider the duration of the jury's deliberations prior to the departure of the juror and, without applying an inflexible rule, determine whether the jury appears to have progressed to a stage at which issues have been decided and deliberations cannot commence anew. If a partial verdict has been rendered, or the circumstances otherwise suggest that jurors have decided one or more issues in the case, the trial court should not authorize a juror substitution, but should declare a mistrial. If the trial court permits the substitution of an alternate juror, it must instruct the newly composed jury before its deliberations. (pp. 24-25)

8.    Here, the original jury never announced that it had reached a determination of guilt or innocence, nor was there a suggestion that the juror's inability to continue derived from her view of the case or her discussions with her colleagues. There was no evidence that she was a holdout juror, manifested bias, had confronted hostile colleagues, or that disputes had arisen in the jury room. After she was replaced, the newly constituted jury deliberated extensively and rendered a verdict only after deliberating for a period sufficient to permit an open and thorough discussion of the issues. (pp. 25-27)

9.    To the extent that State v. Banks, 395 N.J. Super. 205, (App. Div. 2007) barred trial courts from substituting a juror and directing new deliberations, by virtue of the fact that the original jury had reached an initial impasse and was charged to continue deliberations and attempt to reach an agreement, it is overruled. An initial impasse does not necessarily signal the end of meaningful deliberation. To the contrary, the charge to a deadlocked jury instructs them to consider the viewpoints of other jurors with an open mind. A juror substitution, necessitated by illness, that conforms with Rule 1:8-2(d)(1) does not alter that conclusion. (pp. 28-30)

The judgment of the Appellate Division is **REVERSED** and the matter is **REMANDED** to the Appellate Division for consideration of the issues that the panel did not reach in light of its resolution of the jury substitution issue.

**JUDGE CUFF, DISSENTING**, expresses the view that because the jury had previously reached an impasse, its deliberations had proceeded too far to permit the trial court to substitute an alternate.

**CHIEF JUSTICE RABNER, JUSTICE LaVECCHIA, JUSTICE FERNANDEZ-VINA, and JUDGE RODRÍGUEZ (temporarily assigned) join in JUSTICE PATTERSON's opinion. JUDGE CUFF (temporarily assigned) filed a separate, dissenting opinion. JUSTICE ALBIN did not participate.**

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

       v.

MICHAEL ROSS II,

    Defendant-Respondent.


        Argued January 6, 2014 – Decided June 24, 2014
        – Corrected July 3, 2014

        On certification to the Superior Court,
        Appellate Division.

        Nancy A. Hulett, Special Deputy Attorney
        General/Acting Assistant Prosecutor, argued
        the cause for appellant (Andrew C. Carey,
        Acting Middlesex County Prosecutor,
        attorney).

        Jay L. Wilensky, Assistant Deputy Public
        Defender, argued the cause for respondent
        (Joseph E. Krakora, Public Defender,
        attorney).

    JUSTICE PATTERSON delivered the opinion of the Court.

    During the trial of defendant Michael Ross II for two counts of first-degree murder, two weapons offenses and hindering apprehension, the jury twice interrupted its deliberations to communicate with the trial court. On the fifth day of deliberations, the jury advised the court that it was "unable to reach a unanimous decision on any count" of

defendant's indictment, and sought instruction from the court. The trial court directed the jury to resume deliberating, with a view to reaching an agreement, if such agreement could be achieved without impairing the judgment of individual jurors. The jury complied, but later that day communicated with the court to report that one of the jurors had become ill. After dismissing the jury for the day and speaking with the ailing juror the following morning, the trial court excused her from further service. Without objection from the State or defendant, the court substituted an alternate juror for the excused juror. The reconstituted jury, instructed to initiate new deliberations with the full participation of the substituted juror, deliberated for more than sixteen hours and convicted defendant of all charges. Defendant appealed, and an Appellate Division panel reversed, holding that the trial court's decision to substitute an alternate for the ailing juror constituted plain error.

We hold that in the circumstances of this case, the trial court properly addressed both of the issues raised by the jury in the course of its deliberations. The trial court's instruction to the jury to continue deliberations, notwithstanding its initial report of a deadlock, conformed to this Court's decision in State v. Czachor, 82 N.J. 392, 404-06 (1980). Confronted with a report that a juror was unable to

2

continue because she was ill, the trial court verified that the juror's inability to continue was prompted by her condition, rather than a dispute among the jurors.  The trial court then substituted an alternate in accordance with Rule 1:8-2(d)(1) and properly instructed the reconstituted jury to commence new deliberations.  In its response to both developments, the trial court preserved the confidentiality and integrity of the jury's deliberations and protected defendant's right to a fair trial.

Accordingly, we reverse the judgment of the Appellate Division, and remand to the Appellate Division for consideration of the remaining issues that the panel did not reach in light of its resolution of the jury substitution issue.

I.

On October 30, 2003, Alesky Bautin and Sergey Barbashov were shot and killed while sitting in Barbashov's parked vehicle in front of an apartment complex in Avenel.  More than three years later, defendant was indicted for two counts of first-degree murder, N.J.S.A. 2C:11-3(a)(1),(2); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a); third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); and third-degree hindering apprehension or prosecution, N.J.S.A. 2C:29-3(b)(1).

Defendant's trial commenced on April 1, 2008, and continued for eight trial days.  The State's theory of the case was that

3

defendant shot the victims after mistaking one of them for a man who had pointed a gun at him from a car similar to the victims' vehicle. In the course of the trial, the jury heard the testimony of twenty witnesses, including three expert witnesses called to opine as to the cause of the victims' deaths. The prosecution and defense introduced into evidence more than one hundred exhibits. Defendant testified on his own behalf, denying any involvement in the murders. During summation, defense counsel suggested that two of defendant's acquaintances, not defendant, were responsible for the shooting.

The trial court charged the jury on April 16, 2008. At the close of the charge, the trial court advised the jurors that they could pose questions or communicate with the court by writing a note and handing it to a court officer. The trial judge promised to respond to any questions posed as quickly as possible, and admonished the jurors to avoid disclosing the status of their deliberations to the court and counsel in the event that they decided to ask a question. The court then randomly selected three jurors to serve as alternates.

The jury deliberations commenced during the afternoon of April 16, 2008, and continued that day for less than an hour. The jury then deliberated for more than four hours on April 17, 2008, and for a similar period on April 18, 2008. During the first three days of deliberation, the jury posed procedural

4

questions to the trial judge and requested readbacks of the testimony of two witnesses. The jury deliberated for more than five hours on the fourth day, April 21, 2008. Late that day, the jurors sought clarification "in layman's terms" of the meaning of reasonable doubt. They were told by the trial court that they would be charged on that subject the following day, and that they should suspend deliberations for the evening. The jury was excused at 3:42 p.m.

The following day, after being charged with respect to reasonable doubt, the jury sent to the trial court a note stating: "The jury was unable to reach a unanimous decision on any count. What is your next instruction?" With no objection from either counsel, the trial court read to the jury the Model Criminal Jury Charge based on Czachor, supra, 82 N.J. 392 (the Czachor charge). See Model Jury Charge (Criminal), "Judge's Instructions on Further Jury Deliberations" (Jan. 14, 2013). The trial court instructed the jury:

> So, ladies and gentlemen, it's your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but you do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views, change your opinion, if convinced it's erroneous. But do not surrender your honest conviction as to the weight or effect of evidence

5

> solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict.  You are not partisans.  You are judges, judges of the facts.

After receiving the Czachor charge and taking a lunch break, the jury deliberated for about two and one-half hours. The trial judge then received a note from the jury stating: "Juror No. 5 is sick and does not expect to be here tomorrow. Thank you."  In the presence of counsel, the trial court questioned Juror No. 5 about her condition.  Juror No. 5 stated that she had "a terrible headache," and that her "stomach [was] nauseous."  The trial judge told the juror "to go home" for the day and to call the court in the morning if she was "not feeling up to" coming in.

The following day, April 23, 2008, Juror No. 5 called the trial judge's chambers and advised the judge's assistant that she was "still ill" and that she could not return to court. With counsel present, the trial judge contacted the juror by telephone.  The juror confirmed on the record that she had advised the judge's assistant that she remained ill.  She stated that she had a "[h]eadache and sore throat and nauseous stomach," and that she "wouldn't be able to make it" to court that day.  After verifying that neither counsel had questions for the juror, the judge excused her from further participation

6

in the trial, admonished her not to discuss the case while it remained pending, and thanked her for her service.

The trial court then confirmed on the record a prior discussion in which the court and counsel "agreed that [the court was] going to substitute a new juror."  The court noted that although the jury had deliberated for more than four days, there was no indication that it had "made any actual fact findings or reached any determinations of guilt or innocence," or that it had rendered a partial verdict.  The court concluded that there was "nothing that would indicate that a new juror [would] not play a meaningful role in deliberations."  It recounted the communications received from the jury the previous day, and asked counsel to confirm their positions regarding the replacement of the juror on the record.

The prosecutor noted her agreement with the court's decision.  Defense counsel stated that he had no objection.  He noted "that had the jury come back" after being charged to resume deliberations, and stated that it could not reach a unanimous verdict, "then we'd be talking [about] a different scenario."  Defense counsel commented that since there was only one note from the jury indicating its inability to reach a verdict, followed by the trial court's Czachor instruction and the report of the juror's illness, "I don't think there's any credible way to even form an objection, if I had one."

7

The court clerk then randomly selected one of the three alternate jurors to serve as a substitute juror. In accordance with the Model Criminal Jury Charge, the trial court advised the jurors that "as of this moment, you are now a new jury." It instructed them to set aside any statements made in deliberations prior to the departure of the excused juror and to disregard any opinions expressed by that juror. The court admonished the jury to "consider all evidence presented at trial as part of your full and complete deliberations until you reach your verdict." See Model Jury Charge (Criminal), "Judge's Instructions When Alternate Juror Empaneled After Deliberations Have Begun" (Jan. 14, 2013).

The reconstituted jury commenced its deliberations on April 23, 2008, after receiving the trial court's instructions. It met for five hours before being excused for the day. The jury deliberated for four and one-half hours on April 24, 2008, and requested a readback of testimony different from the testimony that the original jury had requested during its deliberations. The jury deliberated for five and one-half hours on April 25, 2008. On April 29, 2008, the fourth day of its deliberations, the jury met for about two hours before announcing that it had reached a verdict. In total, the reconstituted jury deliberated for more than sixteen hours before arriving at a verdict. The jury convicted defendant of all charges pending against him.

8

More than three months after the verdict, in an untimely motion for a new trial, defendant objected for the first time to the substitution of the juror.  Rule 3:20-1; Rule 3:20-2. Defense counsel conceded that the trial court and counsel had done an "excellent job" of crafting a solution following the juror's illness.  He also acknowledged that the reconstituted jury was "particularly good," as it was observed discarding papers that had been posted in the jury room during the original jury's pre-substitution discussions, consistent with the court's instruction to begin deliberations anew.  He argued, however, that the Appellate Division opinion in State v. Banks, 395 N.J. Super. 205 (App. Div.), certif. denied, 192 N.J. 598 (2007), barred the substitution of a juror in the circumstances of this case, and compelled the trial court to declare a mistrial.  The trial court denied the motion for a new trial, distinguishing Banks on the ground that the juror in that case was removed for personal bias, not due to an illness.

The trial court merged defendant's weapons convictions into his murder convictions, and sentenced him to a term of life imprisonment subject to an eighty-five percent parole ineligibility period under the No Early Release Act, N.J.S.A. 2C:43-7.2, on each of the two first-degree murder convictions, with the two terms to run consecutively.  It also sentenced defendant to a five-year term of incarceration, to run

consecutively to defendant's two terms of life imprisonment, on the hindering apprehension charge.

An Appellate Division panel reversed defendant's conviction and remanded for a new trial. It held that the trial court's "post-deadlock substitution" of a juror constituted plain error. The panel construed the original jury's declaration that it could not reach a verdict to strongly suggest that some jurors had made up their minds about the case, and were thus incapable of starting deliberations anew. The Appellate Division panel expressed doubt that the alternate juror could fully participate in the deliberations of the reconstituted jury given the original jury's progress to the point of declaring a deadlock.

The State filed a petition for certification, and the Appellate Division stayed its judgment pending the determination of the State's petition. We granted certification. 214 N.J. 118 (2013).

II.

The State challenges the Appellate Division's conclusion that the trial court committed plain error. It contends that the trial judge properly substituted an alternate juror for the juror whose illness prevented her continued involvement in the case. It argues that there is no per se rule setting a point in time, during the deliberations of an original jury, after which a trial court may not substitute an alternate juror for a

10

departing juror and then direct the reconstituted jury to begin its deliberations anew. The State contends that in this case, the original jury deliberated for a reasonable amount of time in light of the length and complexity of the trial. Further, it argues that the reconstituted jury's protracted discussions following the substitution of an alternate for an ill juror confirm that it properly conducted new deliberations leading to the verdict.

Relying on the Appellate Division's decision in Banks, supra, 395 N.J. Super. 205, defendant argues that the Appellate Division properly found plain error in the trial court's substitution of an alternate for the ill juror in this case, and that no juror substitution should take place following a declaration of an impasse and an instruction to the jury to resume deliberations. Defendant urges the Court to rule that a trial court should rarely substitute a juror for any reason after a case goes to the jury. He maintains that the longer the original jury has discussed the case, the less likely it is that a reconstituted jury will be in a position to commence fair and open-minded deliberations. Defendant requests that the Court affirm the Appellate Division's judgment.

### III.

Since defendant failed to object to the trial court's decision to substitute an alternate for an ill juror, we review

11

the trial court's decision under the standard of plain error. In the interests of justice, an appellate court may "notice plain error not brought to the attention of the trial or appellate court." R. 2:10-2. Plain error is "[a]ny error or omission [that] . . . is of such a nature as to have been clearly capable of producing an unjust result." R. 2:10-2.

In this case, we measure against the plain error standard the trial court's sequential responses to two developments in the course of jury deliberations: (1) the court's decision to give an instruction pursuant to Czachor, supra, 82 N.J. at 404-06, rather than declaring a mistrial, in the wake of the jury's announcement of a deadlock; and (2) its substitution of an alternate juror for a juror who became ill, followed by an instruction to the reconstituted jury to deliberate anew. We consider these issues in turn.

A.

In Czachor, this Court provided guidance to trial courts confronted with a jury's declaration that its deliberations have progressed to an impasse. Ibid. The Court found plain error in a trial court's repeated charge to a deadlocked jury in accordance with Allen v. United States, 164 U.S. 492, 17 S. Ct. 154, 41 L. Ed. 528 (1896), which it had previously upheld in State v. Bland Williams, 39 N.J. 471, 484-85, cert. denied, 374 U.S. 855, 83 S. Ct. 1924, 10 L. Ed. 2d 1075 (1963). Id. at 402,

12

404. The <u>Allen</u> charge directed jurors to "'listen, with a disposition to be convinced, to each other's arguments,'" and admonished a dissenting juror to "'consider whether his doubt was a reasonable one . . . [and] whether [the juror] might not reasonably doubt the correctness of a judgment which was not concurred in by the majority.'" <u>Id.</u> at 395-96 (alternations in original) (quoting <u>Allen</u>, <u>supra</u>, 164 <u>U.S.</u> at 501, 17 <u>S. Ct.</u> at 157, 41 <u>L. Ed.</u> at 531). This Court considered the <u>Allen</u> charge to have "coercive effects upon jury deliberations," and disapproved both its application and the New Jersey Model Criminal Jury Charge on this issue then in use in state court criminal trials. <u>Id.</u> at 394, 404-05. In its stead, this Court adopted the model charge suggested by the American Bar Association (ABA). <u>Id.</u> at 405-06 (citing ABA Project on Minimum Standards for Criminal Justice, <u>Standards Relating to Trial by Jury</u>, § 5.4, at 145-46 (Approved Draft 1968)).[1]

Accordingly, New Jersey's Model Criminal Jury Charges now include the <u>Czachor</u> charge, to be given to a jury that has announced a deadlock. That charge admonishes jurors to "deliberate with a view to reaching an agreement," to independently decide the case "after an impartial consideration

---

[1] The current ABA standard is virtually identical to the one found in the 1968 Approved Draft. <u>See</u> ABA Standards for Criminal Justice, <u>Discovery and Trial by Jury</u> § 5.4 (3d ed. 1996).

13

of the evidence with fellow jurors" and to re-examine and change individual views if they are erroneous; it also counsels them to avoid surrendering an honest conviction simply to conform to other jurors' opinions or to render a verdict.  Model Jury Charge (Criminal), "Judge's Instructions on Further Jury Deliberations" (Jan. 14, 2013).[2]

The trial court's determination as to whether a Czachor charge is warranted requires a careful analysis of the circumstances.  When a jury communicates a deadlock, trial courts "should be guided in the exercise of sound discretion by such factors as the length and complexity of trial and the quality and duration of the jury's deliberations."  Czachor, supra, 82 N.J. at 407.  Consistent with the principle that a jury verdict must not be the product of coercion, appellate review of a trial court's supplemental instruction is "guided by a concern for the weighty role that the judge plays in the dynamics of the courtroom."  State v. Figueroa, 190 N.J. 219, 238 (2007) (citing State v. Tyler, 176 N.J. 171, 181 (2003)).  The trial judge's discretion must be exercised in a manner that ensures "'a jury verdict free from untoward interference from

---

[2] In a January 2013 reorganization of the Model Criminal Jury Charges, the Czachor charge was "removed from the Criminal Final Charge and made into a separate Non 2C charge."  Notice to the Bar, Updates to Model Criminal Jury Charges, 211 N.J.L.J. 319 (Feb. 4, 2013).  However, the language of the instruction to be given to the jury is unaltered since the trial at issue in this case.

14

any source, including the court.'" State v. Shomo, 129 N.J. 248, 257 (1992) (quoting State v. Collier, 90 N.J. 117, 122 (1982)); see also State v. Corsaro, 107 N.J. 339, 346 (1987) (cautioning that "the deliberative process . . . must be insulated from influences that could warp or undermine the jury's deliberations and its ultimate determination"). When the "'difference of opinion between members of the jury is clearly intractable,' . . . then the jury is deadlocked and a mistrial should be declared." Figueroa, supra, 190 N.J. at 237 (quoting State v. Valenzuela, 136 N.J. 458, 469 (1994)).[3]

Confronted by the jury's statement that it had been unable to reach a unanimous verdict on any count, and responding to its request for direction in light of that development, the trial court properly applied the principles articulated by this Court in Czachor. The jury in this case did not signal an intractable divide that would warrant a declaration of mistrial. Instead, it communicated that its effort to reach consensus on the issues had fallen short. The trial court properly refrained from any

---

[3] To that end, a footnote to the Model Criminal Jury Charge instructs trial judges, "[w]hen you feel a reasonable period of time has gone by subsequent to the delivery of your charge, be aware of N.J.S.A. 2C:1-9d(2)." A sentence added to the footnote in 2013 informs the trial judge, but not the jury, that "[m]istrial for a jury unable to reach a verdict will not prevent retrial." Model Jury Charge (Criminal), "Judge's Instructions on Further Jury Deliberations" (Jan. 14, 2013); Notice to the Bar, Updates to Model Criminal Jury Charges, 211 N.J.L.J. 319 (Feb. 4, 2013).

inquiry that could have compromised the confidentiality of the jury's deliberations, and instructed the jury to resume deliberations in accordance with the approved Czachor charge. As both parties agree, the trial court properly exercised its discretion in response to the jury's communication of an impasse by providing a Czachor charge and directing the jury to resume deliberations.

                              B.

Shortly after the original jury reconvened, a juror's illness precluded her from continued participation in this case, posing a second challenge to the trial court. The trial court's decision to substitute an alternate juror for the ill juror gave rise to the issue at the center of this appeal.

Rule 1:8-2(d)(1) sets forth the procedure for the substitution of an alternate juror for a juror who "dies or is discharged by the court because of illness or other inability to continue." If the trial court elects to replace an excused juror, rather than to declare a mistrial, the court directs the clerk to draw the name of the alternate who will deliberate. R. 1:8-2(d)(1). It "instruct[s] the jury to recommence deliberations," and gives any other "supplemental instructions as may be appropriate." R. 1:8-2(d)(1). The newly composed jury then begins its deliberations.

16

Rule 1:8-2(d)(1) "delicately balances two important goals: judicial economy and the right to a fair jury trial." State v. Jenkins, 182 N.J. 112, 124 (2004) (citing State v. Phillips, 322 N.J. Super. 429, 436 (App. Div. 1999)). As this Court has observed,

> [d]eclaring a mistrial imposes enormous costs on our judicial system, from the expenditure of precious resources in a retrial to the continued disruption in the lives of witnesses and parties seeking closure. Any court that has presided over days or weeks of testimony must experience a sense of futility at the prospect of aborting a trial in the jury deliberation stage.
>
> [Id. at 124.]

The juror substitution procedure set forth in Rule 1:8-2(d)(1) has been held not to "offend our constitutional guaranty of trial by jury." State v. Miller, 76 N.J. 392, 406 (1978); see also State v. Joel Williams, 171 N.J. 151, 162 (2002) (stating that substitution of juror in course of deliberations "does not in and of itself offend a defendant's constitutional guarantee of a trial by jury"). Such a substitution, however, contravenes constitutional norms if it impairs the mutuality of deliberations -- the "joint or collective exchange of views among individual jurors." Joel Williams, supra, 171 N.J. at 163; see also State v. Hightower, 146 N.J. 239, 253 (1996). The trial court is charged with maintaining "an environment that

17

fosters and preserves that exchange until the jury reaches a final determination." Joel Williams, supra, 171 N.J. at 163 (citing Corsaro, supra, 107 N.J. at 349). The court must be prepared to declare a mistrial if a substitution would imperil the integrity of the jury's process. Hightower, supra, 146 N.J. at 253-54. The trial judge's task is complicated by the need to diligently protect the confidentiality of jury communications as he or she inquires about the status of the juror in question. In short, the trial court must appraise the impact of a juror substitution on the jury process, without tainting that process with intrusive questions. It must conduct any inquiry with respect to the juror in question, or the jury as a whole, with caution and restraint.

Given the competing interests at stake, this Court has directed trial courts to focus on two related issues. First, the trial court must determine the cause of the juror's concern and assess the impact of the juror's departure on the deliberative process. Second, in light of the timing of the juror's dismissal and other relevant considerations, the trial court must ascertain whether a reconstituted jury will be in a position to conduct open-minded and fair deliberations.

In evaluating the cause of a juror's departure, our courts distinguish between reasons that are personal to the juror, which may permit a substitution under Rule 1:8-2(d)(1), and

18

issues derived from "the juror's interaction with the other jurors or with the case itself," which may not. Joel Williams, supra, 171 N.J. at 163 (citing Valenzuela, supra, 136 N.J. at 468). Consistent with the language of Rule 1:8-2(d)(1), and in the absence of indicia that a reconstituted jury cannot engage in meaningful deliberations, our courts have consistently upheld the substitution of an alternate for a juror excused for personal reasons unrelated to the case. A physical illness is recognized in the text of Rule 1:8-2(d)(1) to constitute a basis for removal and replacement of a juror. See R. 1:8-2(d)(1); Jenkins, supra, 182 N.J. at 130 (observing that "[a] juror suffering from a purely personal problem, like a physical illness, could be removed and replaced by an alternate without fear that the ultimate verdict's validity has been compromised").

This Court has also considered a juror's psychological condition as a reason that he or she cannot continue to serve. The "inability to continue" language of Rule 1:8-2(d)(1) "has been invoked to remove a juror under circumstances that reveal the juror's emotional condition renders him or her unable to render a fair verdict." Joel Williams, supra, 171 N.J. at 164 (citing Hightower, supra, 146 N.J. at 255); see also Miller, supra, 76 N.J. at 406-07 (holding that trial court properly substituted an alternate for juror who "stated that in his then

19

nervous and emotional condition, he did not think he could render a fair verdict"); State v. Trent, 157 N.J. Super. 231, 235-36, 240 (App. Div. 1978), rev'd on other grounds, 79 N.J. 251 (1979) (authorizing replacement of juror who cited her "nervous" and "emotional" condition, manifested in headaches and nausea, because defendant reminded her of her son). This Court has also held that the "inability to continue" standard of Rule 1:8-2(d)(1) authorizes the substitution of an alternate for a juror who seeks to be excused because of the financial hardship imposed by continued service. Joel Williams, supra, 171 N.J. at 167.

These personal concerns prompting a juror's departure in the midst of deliberations -- a physical illness, an emotional condition or the financial burden of service -- do not originate in the interactions between the excused juror and the remaining jurors. Accordingly, they do not preclude the substitution of an alternate for the excused juror. See R. 1:8-2(d)(1).

In contrast, this Court's decision in Valenzuela, supra, involved the dismissal of a juror whose relationships with other jurors deteriorated in the course of deliberations. 136 N.J. at 462-66. There, the trial court received a note stating that a juror did not want to continue her service. Id. at 462. The juror represented that the other jurors were "ganging up" on her, that they were discounting her opinions, and that they

20

considered her an obstacle to a verdict.  Id. at 462-65.  This Court held that because the juror's inability to complete her service "related not only to personal circumstances but also to factors arising from the juror's interactions with the other jurors," her discharge from further service was an abuse of discretion.  Id. at 473.

In addition to determining whether issues personal to the juror or troubled relationships in the jury room have prompted the juror's departure, the trial court should consider whether a reconstituted jury will be in a position to meaningfully evaluate and discuss the case.  "No bright line rule in respect of the length of jury deliberations triggers a finding that deliberations have progressed too far to permit the substitution of an alternate."  Joel Williams, supra, 171 N.J. at 169.  Instead, the court should consider such factors as the timing of the juror's departure, his or her explanation of the problem prompting the inquiry, and any communications from the jury that may indicate whether deliberations have progressed to the point at which a reconstituted and properly charged jury will be unable to conduct open and mutual deliberations.

This Court has considered these factors in several settings.  In Joel Williams, the Court rejected the Appellate Division panel's conclusion that the juror's departure occurred at a "critical time," and that the juror's comment that he "gave

21

it [his] best shot" implicated the deliberative process, barring substitution. Id. at 168-69 (alteration in original). There, the juror's request to be excused for financial reasons followed approximately three hours of deliberations. Id. at 159. Because the jury asked for "a readback of critical identification testimony" immediately before the juror was excused, and deliberated for several hours after the substitution of a new juror before reaching a verdict, the Court surmised that "[t]he jury could not have reached a determination of guilt or innocence" in advance of the substitution. Id. at 169. The Court did not consider the deliberations "to have progressed to such a point that the new juror would not have [had] a realistic opportunity to share in the deliberative process." Id. at 170.

This Court's opinion in Jenkins, supra, 182 N.J. 112, arose in a different context. There, a juror claimed to identify with the defendant because of his race, and "unequivocally expresse[d] her unwillingness or inability to put aside bias and passion and follow the law." Id. at 119, 123. The Court therefore held that the trial court could have properly excused the juror due to her bias. Id. at 130. It found, however, that despite a good faith and earnest effort to address a difficult situation, the trial court had inadvertently elicited from the juror information about the positions of other jurors regarding

22

the merits of the case.  Id. at 134.  Cautioning judges to avoid such disclosures by warning jurors not to reveal the substance of a jury's confidential discussions, the Court held that it was error for the trial judge to have permitted the reconstituted jury to deliberate in these circumstances, and remanded for a new trial.  Id. at 134-35, 137.

The Court reached a similar conclusion in Corsaro, supra, 107 N.J. 339.  In that case, the jury reached a partial verdict before the trial court replaced a juror who had briefly vanished and returned to court, apparently intoxicated.  Id. at 341-42.  In the wake of a partial verdict by the original jury, the Court held that it was plain error to substitute an alternate for a juror at that late stage:

> [W]here the deliberative process has progressed for such a length of time or to such a degree that it is strongly inferable that the jury has made actual fact-findings or reached determinations of guilt or innocence, the new juror is likely to be confronted with closed or closing minds.  In such a situation, it is unlikely that the new juror will have a fair opportunity to express his or her views and to persuade others.  Similarly, the new juror may not have a realistic opportunity to understand and share completely in the deliberations that brought the jurors to particular determinations, and may be forced to accept findings of fact upon which he or she has not fully deliberated.
>
> [Id. at 352.]

23

Thus, when the circumstances suggest a strong inference that the jury has affirmatively reached a determination on one or more factual or legal issues, the trial court should not substitute an alternate for an excused juror. See id. at 354.

We derive from these cases several principles to guide a trial court's determination as to whether a reconstituted jury will meaningfully deliberate. First, the trial judge should conduct any inquiry of the juror seeking to be excused with caution, and should direct the juror not to reveal confidential jury communications. See Jenkins, supra, 182 N.J. at 134-35. Second, the trial court may consider the duration of the jury's deliberations prior to the departure of the juror. Without applying an inflexible rule that would preclude substitution after a specific amount of time has elapsed, the trial court should determine whether the jury appears to have progressed to a stage at which issues have been decided and deliberations cannot commence anew. See Joel Williams, supra, 171 N.J. at 169-70. Third, if a partial verdict has been rendered, or the circumstances otherwise suggest that jurors have decided one or more issues in the case, the trial court should not authorize a juror substitution, but should declare a mistrial. See Jenkins, supra, 182 N.J. at 132-33; Corsaro, supra, 107 N.J. at 352-54.

Finally, if the trial court permits the substitution of an alternate juror for an excused juror, it must instruct the newly

24

composed jury before its deliberations. The trial court should charge the jury that the excused juror's departure was prompted by personal issues, rather than by his or her view of the case or relationships with other jurors, that the reconstituted jury should not speculate on the reasons for the juror's departure, and that the jury should begin deliberations anew by setting aside their previous discussions so that the reconstituted jury may conduct full and complete deliberations. The Model Criminal Jury Charge, revised following this Court's decision in Jenkins, accurately and concisely conveys those instructions. See Model Jury Charge (Criminal), "Judge's Instructions When Alternate Juror Empaneled After Deliberations Have Begun" (Jan. 14, 2013).[4]

Applying these principles to this case, we hold that the trial court's decision to substitute an alternate for the ill juror after the deadlock had been announced did not constitute plain error. Nothing in the original jury's communications with the trial court suggested that any juror had reached a

---

[4] In Jenkins, supra, the Court did not find error in the trial court's instruction to the reconstituted jury which was "consistent with the Model Criminal Charge." 182 N.J. at 135. The Court recommended, however, that the Committee on Model Criminal Charges amend the charge to be in conformance with a correspondent instruction in the Model Civil Charge. Id. at 136-37. In 2005, the post-substitution charge to a jury set forth in the Model Criminal Jury Charges was revised accordingly, and following a 2013 reorganization of the Model Charges, is it now set forth in a separate charge. Model Jury Charge (Criminal), "Judge's Instructions When Alternate Juror Empaneled After Deliberations Have Begun" (Jan. 14, 2013).

25

determination on a factual or legal issue. There was no indication that the jury was unable to engage in open-minded discussions after the substitution. Indeed, the trial court charged the jury to conduct fair and mutual deliberations, and we presume that its instructions were followed. See State v. Winder, 200 N.J. 231, 256 (2009).

Although the original jury deliberated for a significant period and requested a readback of evidence prior to the substitution, it did not announce or imply that it had rendered a partial verdict or that it had otherwise "reached a determination of guilt or innocence." Joel Williams, supra, 171 N.J. at 169. In contrast to the settings of Corsaro and Jenkins, there was no suggestion in the trial court's cautious inquiry of the excused juror that the juror's inability to continue derived from her view of the case or her discussions with her colleagues. There was no evidence that the juror in question was a holdout juror, that she manifested bias, that she had confronted hostile or intractable colleagues, or that disputes had arisen in the jury room. Instead, the precipitating event was clearly the juror's illness, which was sufficiently debilitating to preclude her further service.

Moreover, in the wake of the trial court's proper instruction to the jury to begin deliberations anew, the newly constituted jury undertook protracted deliberations. The jury

26

met for more than sixteen hours over four days. It sought and received a readback of testimony distinct from that requested by the original jury. It rendered a verdict only after deliberating for a period sufficient to permit an open and thorough discussion of the issues.

In reversing the trial court's judgment, the Appellate Division panel relied upon the holding in Banks, supra, 395 N.J. Super. at 218, another Appellate Division decision. In Banks, after the jury declared an impasse and the trial court instructed it pursuant to Czachor to continue deliberating, the jury asked the trial court how it should address a juror who "may hold personal bias towards the police or victims due to prior circumstances." Id. at 211, 218. After interviewing the jurors individually, the trial court "concluded that the problem juror's inability to function was personal and unrelated to his interaction with the other members of the jury," and thus dismissed the juror. Id. at 214. The defendant then made a motion for a mistrial, which the trial court denied. Ibid.

The Appellate Division in Banks reversed and remanded for a new trial. Id. at 220. It confirmed the propriety of the Czachor charge given by the trial court, but concluded that the jury's initial declaration of an impasse itself "indicates that deliberations have progressed to a point where the individual jurors have made determinations about the evidence and facts,"

27

thereby compelling a mistrial. Id. at 211, 218. The panel cited Corsaro and Jenkins as authority for its holding on this issue. Id. at 218.

The Appellate Division panel in Banks correctly applied Jenkins, supra, 182 N.J. at 130-31, to hold that the excused juror's manifest bias warranted a mistrial. Id. at 216. It incorrectly concluded, however, that a trial court may never substitute an alternate for an excused juror after an initial declaration of a deadlock and a Czachor charge. Id. at 219. In authorizing continued deliberations following a deadlock and an instruction, this Court declined to hold in Czachor, supra, that an initial impasse signals the end of meaningful deliberations. 82 N.J. at 404-06 (directing trial courts, in appropriate circumstances, to charge deadlocked jury to continue deliberations). To the contrary, the Czachor charge instructs jurors to consider the viewpoints of other jurors with an open mind. See Model Jury Charge (Criminal), "Judge's Instructions on Further Jury Deliberations" (Jan. 14, 2013). In short, Czachor contemplates that a previously deadlocked jury can conduct fair and effective deliberations notwithstanding an earlier impasse.[5] A juror substitution, necessitated by illness,

_____

[5] We respectfully disagree with the view of our dissenting colleague that because the jury had previously reached an impasse, its deliberations had proceeded too far to permit the trial court to substitute an alternate. Post at __ (slip op. at

28

that conforms with Rule 1:8-2(d)(1) does not alter that conclusion.[6]

Accordingly, we overrule the Appellate Division panel's decision in Banks, supra, to the extent that it generally barred trial courts from substituting a juror and directing new deliberations, by virtue of the fact that the original jury had reached an initial impasse and was charged in accordance with Czachor. 395 N.J. Super. at 218-20.

We hold that in this case, the trial court properly responded to the original jury's statement that it was at an impasse and to the subsequent illness of one juror. In each situation, the trial court determined the relevant facts without

2). This Court's opinion in Czachor, supra, is premised upon the principle that a properly instructed jury can and will meaningfully deliberate, notwithstanding a prior declaration of an impasse. 82 N.J. at 404-06. Following the trial court's administration of the Czachor charge and resumption of deliberations, which our dissenting colleague agrees was an appropriate measure, there was no indication that the jury was unable to conduct open-minded and fair deliberations, either before or after the substitution of an alternate for the ill juror.

[6] The cases upon which the Appellate Division in Banks relied, Corsaro and Jenkins, involved jury deliberations that had clearly progressed to the point at which jurors had reached final determinations on factual and legal issues, thus precluding meaningful deliberations by a reconstituted jury. Jenkins, supra, 182 N.J. at 132-33 (pre-substitution jury was "prepared to convict defendant at the moment of substitution"); Corsaro, supra, 107 N.J. at 341-42 (pre-substitution jury reached partial verdict on three of five counts). Neither Corsaro nor Jenkins stands for the proposition that once an impasse has been declared and a Czachor charge given, an alternate can never be substituted for a juror excused for personal reasons unrelated to the case.

29

compromising the integrity of the jury's deliberations, and instructed the jury in accordance with this Court's decisions. In challenging circumstances, the court ensured that defendant received a fair trial. It committed no plain error warranting a new trial.

IV.

Therefore, the judgment of the Appellate Division is reversed, and the matter is remanded to the Appellate Division for consideration of the remaining issues that the panel did not reach in light of its resolution of the jury substitution issue.

CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA and FERNANDEZ-VINA; and JUDGE RODRÍGUEZ (temporarily assigned) join in JUSTICE PATTERSON's opinion. JUDGE CUFF (temporarily assigned) filed a separate, dissenting opinion. JUSTICE ALBIN did not participate.

30

STATE OF NEW JERSEY,

 Plaintiff-Appellant,

   v.

MICHAEL ROSS II,

 Defendant-Respondent.


 JUDGE CUFF (temporarily assigned), dissenting.

 The majority holds that the trial judge properly issued a jury instruction consistent with State v. Czachor, 82 N.J. 392 (1980), when the jury reported it was deadlocked, and properly substituted an alternate juror following the Czachor instruction after a deliberating juror fell ill and was unable to continue. Ante at ___ (slip op. at 2). In doing so, the majority also overrules State v. Banks, 395 N.J. Super. 205 (App. Div.), certif. denied, 192 N.J. 598 (2007), "to the extent that it held that it generally barred trial courts from substituting a juror and directing new deliberations" following declaration of impasse and delivery of a Czachor charge. Ante at ___ (slip op. at 29). I readily join the majority opinion to the extent that it holds that the trial court properly issued a Czachor charge when informed by the jury that it had reached an impasse in its deliberations. I would also join the majority opinion if the

1

ill juror had been substituted before the jury declared an impasse. I respectfully dissent from the majority holding that the trial court could discharge the ill, deliberating juror, substitute an alternate juror, and instruct the jury to continue its deliberations anew following declaration of impasse and issuance of a Czachor instruction.

Our Rules provide that a juror may be replaced once a case has been submitted to the jury only in the event the juror dies or because of illness or other inability to continue. R. 1:8-2(d)(1). However, the inquiry does not end there. We must then ask a second question: whether "the jury's deliberations ha[ve] proceeded so far towards completion that a reconstituted jury would not [be] capable of considering [the] defendant's guilt or innocence anew." State v. Jenkins, 182 N.J. 112, 116 (2004). If the answer to that inquiry is in the affirmative, a mistrial must be declared. In my view, the jury had proceeded too far in this case to permit the trial court to have a reasonable expectation at the time of substitution that the newly seated juror could be a full and equal participant in the deliberations. I, therefore, respectfully dissent and would affirm the Appellate Division judgment.

## I.

After deliberating over the course of five days, the jury sent a note to the court, stating, "The jury was unable to reach

2

a unanimous verdict on any count.  What is your next instruction?"  The court, in agreement with counsel, instructed the jury to continue deliberating, delivering the standard charge outlined by this Court in Czachor, supra, 82 N.J. at 405-07.  Following a lunch break and less than two hours of deliberation, the jury advised the trial court through another note that a juror had become ill and did not expect to be present the following morning.  The court dismissed the jury for the remainder of the day and determined that the ill juror, who complained of a "terrible headache" and "nausea," would be replaced with one of the alternates if she was unable to attend the next day.  The following morning, the trial judge telephoned the juror in counsel's presence, and the juror confirmed she was too sick to report.  The court asked if either counsel had additional questions; neither did.  The trial court determined that the ill juror could be replaced, and stated:

> [T]here's nothing to say that this jury has made any actual fact findings or reached any determinations of guilt or innocence.  And there's . . . nothing that would indicate that a new juror will not play a meaningful role in deliberations.  There's no partial verdict, nothing like that.  No lengthy colloquy with any juror.

The trial court noted that after receiving the Czachor charge the jurors deliberated for "less than two hours," before sending the note concerning the juror's illness.  The court further

3

opined, "I believe there's no problem substituting one of the alternates."  Neither counsel objected, and the reconstituted jury deliberated over the course of the following four days before announcing its verdict.

II.

This Court has stressed that the substitution of deliberating jurors should be rare and is to be discouraged. In State v. Hightower, we noted that

> any conduct that could upset the process of
> jury deliberations, even judicial conduct
> such as juror substitution, must be
> carefully scrutinized.
>
> Because juror substitution poses a
> clear potential for prejudicing the
> integrity of the jury's deliberative
> process, it should be invoked only as a last
> resort to avoid the deplorable waste of
> time, effort, money, and judicial resources
> inherent in a mistrial.
>
> [146 N.J. 239, 253-54 (1996).]

In State v. Corsaro, the Court held that a juror should not have been substituted after the jury returned a partial verdict, and noted the concern that

> if the jury deliberates for an extended
> period of time, it will have progressed so
> far in its deliberations that it will have
> reached determinations.  Hence, at that
> juncture, the substituted juror will not
> have "had the benefit of the deliberations
> of the other 11," and may indeed be
> pressured by the amount of time the jury has
> deliberated and by the extent of their

4

> progress to conform to their findings and
> verdict.
>
> [107 N.J. 339, 351 (1987) (internal
> citations omitted).]

In Corsaro, the Court quoted at length the Supreme Court of California in People v. Collins, 552 P.2d 742, 746 (Cal. 1976), cert. denied, 429 U.S. 1077, 97 S. Ct. 820, 50 L. Ed. 2d 796 (1977), which highlighted the threat to the delicate balance of deliberations posed by juror substitution:

> "The requirement that 12 person[s] reach a
> unanimous verdict is not met unless those 12
> reach their consensus through deliberations
> which are the common experience of all of
> them.  It is not enough that 12 jurors reach
> a unanimous verdict if 1 juror has not had
> the benefit of the deliberations of the
> other 11."
>
> [Corsaro, supra, 107 N.J. at 349-50 (quoting
> Collins, supra, 552 P.2d at 746).]

Similarly, in Jenkins, supra, the Court reiterated that principles of judicial economy embodied in Rule 1:8-2(d)(1) sometimes must yield to the simple fact that deliberations had proceeded too long to expect that a reconstituted jury could commence its deliberations anew.  182 N.J. at 131-32.

### III.

The issue of whether a reconstituted jury is capable of functioning in the mutual and collective manner required for a fair trial involves numerous issues of juror dynamics.  There should be a legitimate concern that a newly introduced juror may

5

not be able to fully participate, or participate in a fully informed manner, in the renewed deliberations. A new juror may feel pressure to conform to the views of jurors who have been considering the evidence for many hours or days. The original members of the jury may not be capable of starting their deliberations anew. Indeed, Justice Handler's remarks in Czachor about the inherently coercive effect of that instruction apply with equal force here. He stated, "[t]here is rather equal cause to believe that a mind once bent in a particular direction is not easily straightened." Czachor, supra, 82 N.J. at 401. These concerns implicate the fairness of the deliberative process. When the substitution follows a declaration of impasse, the introduction of a new member occurs at a time in the deliberations when the very declaration of an impasse communicates that at least one member of the jury is at odds with the others. Such a circumstance adds to the concern that the integrity and even-handedness of the deliberative process will be compromised.

Judicial economy is a commendable goal. A trial court should never blithely declare a mistrial. Judicial economy concerns mount as the testimony consumes hours, days, or even weeks before the jury can commence its deliberations. Those concerns only increase as jury deliberations proceed over many hours and days. Those concerns, however, can never be the sole

6

driver of the decision whether a juror may be substituted for another after the jury has declared it is deadlocked and the trial court has delivered an appropriate charge to continue deliberations.

Whether a reconstituted jury is able to begin its deliberations anew should be guided by objective principles. Here, the majority salvages this conviction by focusing on information gleaned from the record about what occurred before the jury resumed its deliberations and during the course of its deliberations. It also finds solace in the amount of time the reconstituted jury spent on its deliberations. To be sure, the record here strongly suggests that the reconstituted jury began its deliberations anew. The record also demonstrates that the renewed deliberations progressed over several days and the jury requested read-back of testimony different from the originally constituted jury. For me, however, the correct inquiry is not whether the reconstituted jury conscientiously discharged its duty to begin anew, but rather whether it was capable of doing so.

By focusing on the result, the majority fails to offer practical guidance for trial judges, prosecutors, and defense attorneys. Reliance on extrinsic evidence, such as post-substitution acts of the jury and the supposed course of deliberations, provides no guidance how trial courts and counsel

7

should confront a similar issue in another case.  Such reliance also ventures into the deliberative process, a foray this Court has always condemned.  Jenkins, supra, 182 N.J. at 134; Czachor, supra, 82 N.J. at 400.  Furthermore, the actions a reconstituted jury will take, such as asking for new pads, taking posters off the wall in the jury room, or the length of time the newly constituted jury will deliberate, whether thirteen hours over four days, as here, or as little as one hour, as in Banks, are unknowable at the time the decision must be made.  Adding to the uncertainty, this Court has reversed convictions when the newly constituted jury deliberates for a matter of minutes.  Jenkins, supra, 182 N.J. at 116.

The majority insists that they are simply following the established approach that avoids adopting bright-line rules. Ante at ___ (slip op. at 21).  However, case law demonstrates that bright-line rules do, in fact, exist.  In Corsaro, supra, this Court determined that a juror should not be substituted after a jury returns a partial verdict, because the circumstances suggested that the jury had affirmatively reached a determination on one or more factual issues.  107 N.J. at 354. In Jenkins and Hightower, this Court held that the jury should not be reconstituted when the substituted juror expressed a bias and may have tainted the panel.  Jenkins, supra, 182 N.J. at 134-35; Hightower, supra, 146 N.J. at 255-56.  Finally, in State

8

v. Valenzuela, 136 N.J. 458, 473 (1974), this Court declared that a juror may not be excused and an alternate empanelled because a juror expresses disagreement with the views of the other jurors.

                                    IV.

In this case, when the jury passed a note stating, "The jury was unable to reach a unanimous verdict on any count. What is your next instruction?" it is clear that a determination had occurred. We can assume in this circumstance that at least one juror could not agree with the views of the other jurors. A declaration of deadlock after four days also raises the spectre that some jurors may not be able to begin their deliberations anew. The risk that the deliberative process will be compromised is only heightened when the juror substitution occurs after delivery of the Czachor instruction. I, therefore, respectfully dissent and would affirm the Appellate Division.

SUPREME COURT OF NEW JERSEY

NO.    A-67                         SEPTEMBER TERM 2012

ON CERTIFICATION TO     Appellate Division, Superior Court


STATE OF NEW JERSEY,

        Plaintiff-Appellant,

                v.

MICHAEL ROSS, II,

        Defendant-Respondent.


DECIDED         June 24, 2014 – Corrected July 3, 2014
                Chief Justice Rabner              PRESIDING
OPINION BY           Justice Patterson
CONCURRING/DISSENTING OPINIONS BY
DISSENTING OPINION BY          Judge Cuff


| CHECKLIST | REVERSE AND REMAND | AFFIRM |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | -------------------- | -------------------- |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUDGE RODRÍGUEZ (t/a) | X | |
| JUDGE CUFF (t/a) | | X |
| TOTALS | 5 | 1 |