**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5976-17T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

BRUCE V. DAVIS, JR., a/k/a
BRUCE VICTOR DAVIS, and
BRUCE VICK DAVIS,

    Defendant-Appellant.

_____

          Submitted May 26, 2020 – Decided June 10, 2020

          Before Judges Fasciale and Mitterhoff.

          On appeal from the Superior Court of New Jersey, Law Division, Gloucester County, Indictment No. 17-05-0345.

          Joseph E. Krakora, Public Defender, attorney for appellant (Marcia Blum, Assistant Deputy Public Defender, of counsel and on the brief).

          Christine A. Hoffman, Acting Gloucester County Prosecutor, attorney for respondent (Dana R. Anton and Monica A. Bullock, Special Deputy Attorney Generals/Acting Assistant Prosecutors, on the brief).

PER CURIAM

Defendant appeals from his conviction for fourth-degree stalking, N.J.S.A. 2C:12-10(b). We affirm.

In the summer of 2016, defendant was walking near the victim's home, stopping to ask her for water. The two started talking about jobs, and he asked the victim for her email address to forward her a job opportunity. He emailed her, and the victim subsequently told defendant she was not interested in communicating with him.

Defendant then visited the victim's home on several occasions. In September 2016, defendant went to the victim's home, asked where the victim was, and stated that he was taking her with him. After defendant threatened the boyfriend, he and the victim called police, who told defendant to leave the victim and her family alone.

In February 2017, defendant started visiting the victim's home again. Over the course of a month, defendant would go to the victim's home, ask to see her, and say he was taking her with him. Defendant also tried to add her as a friend on Facebook, and he would send her Facebook messages containing attachments, which the victim described as "love songs."

He was indicted for fourth-degree stalking under N.J.S.A. 2C:12-10(b). A jury found defendant guilty, and the judge sentenced him to 364 days' incarceration—time served—and four years' probation. This appeal followed.

On appeal, defendant argues:

> POINT I
>
> THE CONVICTION MUST BE REVERSED BECAUSE THE INDICTMENT CHARGED A REPEALED OFFENSE, BUT THE [JUDGE] INSTRUCTED ON THE AMENDED VERSION OF THE OFFENSE, WHICH HAS DIFFERENT ELEMENTS, AND THE VERDICT DID NOT IDENTIFY WHETHER THE JURY CONVICTED ON THE REPEALED OFFENSE OR THE AMENDED OFFENSE. (Not Raised Below).
>
> POINT II
>
> THE CONVICTION MUST BE REVERSED BECAUSE THE OFFENSE REQUIRES AT LEAST TWO ACTS, AND THE JURY WAS NOT INSTRUCTED TO IDENTIFY ANY OF THE ACTS ON WHICH IT BASED THE CONVICTION OR TO FIND EACH ACT UNANIMOUSLY. (Not Raised Below).

We review defendant's arguments for plain error because he failed to raise them below. R. 2:10-2. Under this standard, reversal is required if there was an error "clearly capable of producing an unjust result," ibid., meaning there was an error "sufficient to raise 'a reasonable doubt . . . as to whether the error led

3

the jury to a result it otherwise might not have reached.'" State v. Funderburg, 225 N.J. 66, 79 (2016) (alteration in original) (quoting State v. Jenkins, 178 N.J. 347, 361 (2004)); see also State v. Ross, 218 N.J. 130, 143 (2014).

When analyzing a jury instruction, "plain error requires demonstration of 'legal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result.'" State v. Chapland, 187 N.J. 275, 289 (2006) (quoting State v. Hock, 54 N.J. 526, 538 (1969)).

We begin by addressing defendant's first argument that the judge gave the wrong jury instruction. The Legislature amended N.J.S.A. 2C:12-10(b) in 2009. Defendant argues the indictment charged him with stalking under the pre-amendment statute and that his conviction must be reversed because the judge instructed the jury on the amended statute, rather than the indicted offense.

The law on the presentment of indictments is well settled. The New Jersey Constitution provides that "[n]o person shall be held to answer for a criminal offense, unless on the presentment or indictment of a grand jury[.]" N.J. Const. art. I, ¶ 8. The New Jersey Supreme Court has stated that

> the right is satisfied where the indictment "inform[s] the defendant of the offense charged against him, so

4

that he may adequately prepare his defense," and is "sufficiently specific" both "to enable the defendant to avoid a subsequent prosecution for the same offense" and "'to preclude the substitution by a trial jury of an offense which the grand jury did not in fact consider or charge[.]'"

[State v. Dorn, 233 N.J. 81, 93 (2018) (first alteration in original) (citations omitted) (quoting State v. LeFurge, 101 N.J. 404, 415 (1986)).]

The indictment here satisfied these requirements. It informed defendant about the charged offense with sufficient detail so that he could adequately prepare a defense, which is apparent from the trial transcripts.

The judge and counsel participated in a lengthy jury charge conference. It is clear to us that the judge never intended to amend the indictment to include the amended statute's new elements. If he had done so, then he would have been governed by Rule 3:7-4, which addresses amending indictments under certain circumstance, providing:

> The [judge] may amend the indictment . . . to correct an error in form or the description of the crime intended to be charged or to charge a lesser included offense provided that the amendment does not charge another or different offense from that alleged and the defendant will not be prejudiced thereby in his or her defense on the merits. Such amendment may be made on such terms as to postponing the trial, to be had before the same or another jury, as the interest of justice requires.

5

However, a judge may not amend "[a]n error relating to the substance or 'essence' of an offense . . . by operation of that [Rule]." Dorn, 233 N.J. at 94. The degree of a crime is an essential element that must be included in the indictment and cannot be amended by the judge. Id. at 94-95; see also State v. Orlando, 269 N.J. Super. 116, 138 (App. Div. 1993) (stating a "trial [judge] may not amend an indictment to charge a more serious offense"). "[T]he analysis as to whether an indictment was sufficient and whether an amendment under Rule 3:7-4 was appropriate hinges upon whether the defendant was provided with adequate notice of the charges and whether an amendment would prejudice [the] defendant in the formulation of a defense." Dorn, 233 N.J. at 96.

Before the Legislature amended N.J.S.A. 2C:12-10(b), the statute read:

> A person is guilty of stalking . . . if he purposefully or knowingly engages in a course of conduct directed at a specific person that would cause <u>a reasonable person to fear bodily injury to [herself] or a member of [her] immediate family or to fear the death of [herself] or a member of [her] immediate family</u>.

> [(Emphasis added).]

This pre-amendment language appears in the indictment: "[Defendant] did purposely engage in a course of conduct directed at [the victim] that would cause a reasonable person to fear bodily injury to [herself] or a member of [her] immediate family or to fear the death of [herself] or a member of [her]

immediate family."  In 2009, the Legislature amended N.J.S.A. 2C:12-10(b), which now reads:

> A person is guilty of stalking, a crime of the fourth degree, if he purposefully or knowingly engages in a course of conduct directed at a specific person that would cause <u>a reasonable person to fear for [her] safety or the safety of a third person or suffer other emotional distress</u>.
>
> [(Emphasis added).]

The amended statute included the words "or suffer other emotional distress." The parties agreed that the amended statute's "emotional distress" language did not apply because it was not in the indictment.  For the same reason, they also agreed that the amended statute's "third person" language did not apply.

Contrary to what was agreed upon at the charge conference, the judge included the words "third person" and "emotional distress" in the final charge. He stated:

> The applicable statute provides in pertinent part that a person is guilty of stalking if he purposely or knowingly engages in a course of conduct directed at a specific person that will cause a reasonable person to fear for his safety or the safety of a <u>third person or to suffer other emotional distress</u>.
>
> [(Emphasis added).]

A-5976-17T4

Although the final charge was not completely consistent with the discussions during the charge conference, we see no plain error.

First, the evidence presented at trial demonstrated defendant threatened the victim's live-in boyfriend, who is also the father of the victim's child. The judge's misstatement as to "third person" is harmless because defense counsel conceded that the boyfriend qualified both as a "third person" and as a member of the victim's immediate family. Second, as to emotional distress, the judge clarified in the charge what the jury had to find beyond a reasonable doubt— and emotional distress was not in that instruction. Thus, the final jury instructions on stalking did not "raise . . . 'reasonable doubt [that the instruction] led the jury to a result it otherwise might not have reached.'" Funderburg, 225 N.J. at 79 (quoting Jenkins, 178 N.J. at 361).

In his second argument, defendant contends that neither the indictment nor the jury instructions identified any specific acts that would constitute a "[c]ourse of conduct" required under N.J.S.A. 2C:12-10(a)(1). He argues that the judge did not give a specific "unanimity instruction," and that this failure may have led jurors to convict "based on different predicate acts."

A course of conduct is defined as:

> [R]epeatedly maintaining a visual or physical proximity to a person; directly, indirectly, or through

third parties, by any action . . . or means, following, monitoring, observing, surveilling, threatening, or communicating to or about, a person, or interfering with a person's property; repeatedly committing harassment against a person . . . or threats implied by conduct[.]

[N.J.S.A. 2C:12-10(a)(1).]

Likewise, "[c]ause a reasonable person to fear" means "to cause fear which a reasonable victim, similarly situated, would have under the circumstances." N.J.S.A. 2C:12-10(a)(4).

The New Jersey Supreme Court has outlined the "essential elements" of a stalking charge:

> 1) [The] defendant engaged in speech or conduct that was directed at or toward a person, 2) that speech or conduct occurred on at least two occasions, 3) [the] defendant purposely engaged in speech or a course of conduct that is capable of causing a reasonable person to fear for herself or her immediate family bodily injury or death.
>
> [State v. Gandhi, 201 N.J. 161, 186 (2010) (emphasis added) (quoting H.E.S. v. J.C.S., 175 N.J. 309, 329 (2003)).]

"Ordinarily, a general instruction on the requirement of unanimity suffices to instruct the jury that it must be unanimous on whatever specifications it finds to be the predicate of a guilty verdict." State v. Parker, 124 N.J. 628, 641 (1991). "The fundamental issue is whether a more specific instruction was required . . .

9

to avert the possibility of a fragmented verdict." State v. Frisby, 174 N.J. 583, 598 (2002).

Generally, a fragmented verdict results when there exists "a genuine possibility of jury confusion . . . or that a conviction may occur as a result of different jurors concluding that a defendant committed conceptually distinct acts." Parker, 124 N.J. at 641. The analysis considers "whether the allegations in the [charge] were contradictory or only marginally related to each other and whether there was any tangible indication of jury confusion." Id. at 639. We examine two factors: "[W]hether the acts alleged are conceptually similar or are 'contradictory or only marginally related to each other,' and whether there is a 'tangible indication of jury confusion.'" Gandhi, 201 N.J. at 193 (quoting Parker, 124 N.J. at 639).

"[I]n cases where there is a danger of a fragmented verdict[,] the trial [judge] must[,] upon request[,] offer a specific unanimity instruction." Frisby, 174 N.J. at 597-98 (quoting Parker, 124 N.J. at 637). When the defendant fails to make a request, "we must determine whether the absence of a specific unanimity charge 'was clearly capable of producing an unjust result.'" State v. Kane, 449 N.J. Super. 119, 141 (App. Div. 2017) (quoting Frisby, 174 N.J. at 598).

Defendant never requested a specific unanimity charge as to any of the stalking elements. Defendant also fails to provide any evidence of juror confusion. Moreover, the record shows the judge outlined the stalking elements that the jury had to find beyond a reasonable doubt:

> One, that the defendant purposely or knowingly engaged in a course of conduct directed at a specific person, and, two, that the defendant's course of conduct would cause a reasonable person to fear for his or her safety or fear for the safety of a member of his or her family.

Given the judge's instruction, there is no error "clearly capable of producing an unjust result." R. 2:10-2.

As to defendant's argument that the judge should have emphasized "specific acts" of "course of conduct," we conclude this argument lacks merit. R. 2:11-3(e)(2). Contrary to defendant's argument, the judge instructed the jury on "course of conduct," stating:

> Course of conduct means repeatedly maintaining a visual or physical proximity to a person directly, indirectly, or through third parties by <u>any action, method, device, or means, following, monitoring, observing, surveilling, threatening, or communicating to or about a person, communicating harassment</u> between, or . . . against a person or conveying or causing to be conveyed verbal or written threats or threats conveyed by any other means of communication or threats implied by conduct or a combination thereof direct at or towards a person.

A-5976-17T4

Repeatedly means on two or more occasions. Communication means any form of communication made by any means, including, but not limited to, any verbal or written communication, [and] communications conveyed by any electronic device[.]

[(Emphasis added).]

It is clear the judge did not commit any error, let alone plain error, in his charge to the jury.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5976-17T4