**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1274-13T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

J.C.K.,[1]

     Defendant-Appellant.

_____

Argued March 3, 2020 – Decided April 22, 2020

Before Judges Yannotti, Currier and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 12-04-0628.

James M. Doyle argued the cause for appellant.

Mark Musella, Bergen County Prosecutor, argued the cause for respondent (Mark Musella, Bergen County Prosecutor, attorney; Craig A. Becker, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

---

[1] In this opinion, we use initials to identify defendant and others to protect the identity of the victim. R. 1:38-3(c)(12).

Defendant was tried before a jury and found guilty of endangering the welfare of a child, N.J.S.A. 2C:24-4(a). He appeals from the judgment of conviction (JOC) dated August 19, 2013. We affirm.

I.

A Bergen County grand jury charged defendant with second-degree sexual assault upon K.K., by committing an act of sexual contact, specifically touching K.K.'s vagina with the purpose to humiliate or degrade the victim or to sexually arouse or gratify defendant, in violation of N.J.S.A. 2C:14-2(b) (count one). The indictment alleged that at the time of the offense, K.K. was less than thirteen years of age, and defendant was at least four years older.

The grand jury also charged defendant with second-degree endangering the welfare of a child, contrary to N.J.S.A. 2C:24-4(a) (count two). The indictment alleged that defendant had a legal duty for the care of K.K., or had assumed responsibility for her care, and engaged in sexual conduct that would impair or debauch the morals of said child.

At the trial, K.R., K.K.'s mother, testified that she had been married to defendant and two children were born of the marriage. K.R. and defendant separated in April 2008, and they divorced in May 2011. She testified that on Friday, October 29, 2010, she dropped off the children with defendant so that

he could enjoy parenting time. She picked up the children on Sunday afternoon, October 31, 2010.

K.R. stated that while K.K. was getting ready to shower on Sunday evening, she complained about pain in her vaginal area. When K.K. removed her underwear, K.R. noticed that her vaginal area was "red and swollen." K.R. testified that she had previously seen K.K.'s vaginal area appear "like a light pink or a little swollen," but this time it was "very swollen and very red."

K.R. asked K.K. if she had been scratching herself, because she had done that before. K.K. replied that the area was red because defendant had been rubbing it. K.R. asked K.K. if defendant had been putting an ointment on her to treat a rash, as he had done in the past. K.K. said no.

K.K. told K.R. that defendant was "rubbing and touching" her for "no reason" and not applying an ointment. K.K. began to cry and became more upset as K.R. questioned her further. K.K. rubbed the inside of her thigh to demonstrate to K.R. how defendant touched her vaginal area.

K.R. gave K.K. a bath to "help her feel better" then took her for an examination at the Chilton Medical Center. She explained to the doctor what K.K. told her. The doctor examined K.K. while K.R. was in the room. After the examination, someone at the hospital contacted the police. K.R. spoke to

the police on the phone and arranged to meet with detectives. The next day, K.K. and K.R. met with Detectives Brian Lucas and Linda McNulty at the Bergen County Prosecutor's Office (BCPO). K.R. was sworn and provided the detectives a formal statement regarding K.K.'s disclosures.

On November 1, 2010, McNulty conducted a recorded interview of K.K., without K.R. present. McNulty interviewed K.K. again a week later. Recordings of both interviews were played for the jury. K.K. told McNulty that her father touched her in her vaginal area with a "black butter-knife-like object."

The BCPO arranged for K.K. to be examined by a doctor at Children's House in Hackensack. Dr. Nina Agrawal performed the examination. She testified that K.K. told her "Daddy . . . touched her genital area" with a gold-colored butter-knife-like object. Dr. Agrawal stated that the examination did not reveal any signs of obvious trauma. She noted, however, that most instances of sexual abuse without penetration do not leave such signs.

Defendant's mother testified that defendant was living in her home during the weekend when the offenses were allegedly committed. She accounted for defendant's whereabouts throughout the weekend and stated that she did not see K.K. alone with defendant in his bedroom at any time. J.C., who was defendant's girlfriend at the time, stated that she arrived at the home of defendant's parents

around 11:45 p.m. on Saturday evening and spent the night. She left to go to her own house around 12:30 p.m. on Sunday.

According to J.C., defendant, defendant's mother, and K.K. met her and her children at her house for lunch around 1:30 p.m. After lunch, the group went trick-or-treating until defendant dropped the children off with K.R. J.C. testified that she never saw defendant and K.K in a room by themselves. She also said that she never saw K.K. crying or in pain.

Defendant testified that he and the children were very busy during the weekend and he spent very little time alone with K.K. Defendant said the children were "happy as can be" when he dropped them off with their mother on October 31, 2010, and he did not learn of K.K.'s allegations until the evening of the following day.

The jury found defendant not guilty on count one, in which defendant was charged with sexual assault, but found defendant guilty of endangering the welfare of a child by engaging in sexual conduct, as charged in count two. Defendant thereafter filed a motion for a judgment of acquittal pursuant to Rule 3:18, or alternatively, for a new trial pursuant to Rule 3:20-1. Defendant argued that he could not be found not guilty of sexual assault and guilty of endangering the welfare of a child, based on the same acts.

A-1274-13T1

The trial judge denied the motion for reasons stated in a written opinion. The judge found the verdicts were not inconsistent because sexual assault under N.J.S.A. 2C:14-2(b) and endangering the welfare of a child by engaging in sexual conduct under N.J.S.A. 2C:24-4(a) have different elements. The judge also found that even if the verdicts are inconsistent, such verdicts are permitted.

The judge later sentenced defendant to a seven-year term in State prison, and ordered defendant to serve the sentence consecutively to a sentence he was then serving. The judge also imposed appropriate fines and penalties; required defendant to comply with Megan's Law, N.J.S.A. 2C:7-1 to -23; and sentenced defendant to parole supervision for life. The judge entered a JOC dated August 19, 2013.

On appeal, defendant argues that his conviction must be set aside because the jury's verdict on count two was inconsistent with its verdict on count one. He also argues that after the jury advised the judge it was not able to reach a verdict, the judge erred by instructing the jury to continue deliberations. Defendant further argues that the claimed errors cumulatively rendered the trial unfair and require reversal of his conviction.

A-1274-13T1

## II.

We first consider defendant's argument that his conviction must be reversed because the jury's verdict on count two was inconsistent with the verdict on count one. Defendant contends the endangering conviction cannot stand because both counts were based on the same conduct, specifically, his intentional touching of K.K.'s vaginal area. He argues that if he is not guilty of sexual assault, as the jury found, there is no basis for the guilty verdict on the endangering count. We disagree.

Here, the trial judge found the verdicts were not inconsistent because the offenses have different elements. N.J.S.A. 2C:14-2(b) provides in part that a person is guilty of sexual assault if [he] "commits an act of sexual contact with a victim who is less than [thirteen] years old and [he] is at least four years older than the victim." The term "sexual contact" is defined as "intentional touching by the victim or actor . . . of the victim or actor's intimate parts for the purpose of degrading or humiliating the victim or sexually arousing or sexually gratifying the actor." N.J.S.A. 2C:14-1(d). Furthermore, N.J.S.A. 2C:24-4(a) provides that a person is guilty of this offense if he had a legal duty for the care of or assumes responsibility for the care of a child and "engages in sexual

A-1274-13T1

conduct which would impair or debauch the morals of the said child . . . ." Ibid.

Although both charges in this case were based on the allegation that defendant intentionally touched K.K.'s vagina, the jury could have rationally found that defendant did not do so "for the purpose of degrading or humiliating" K.K. or "sexually arousing or sexually gratifying" himself. Moreover, the jury could have rationally found that by intentionally touching K.K.'s vagina, defendant engaged in "sexual conduct which would impair or debauch" K.K.'s morals. Thus, the trial judge correctly determined that the verdicts are not inconsistent.

The trial court also correctly determined that even if the verdicts are inconsistent, the conviction for endangering the welfare of a child must stand. It is well-established that "[i]nconsistent verdicts are accepted in our criminal justice system." State v. Banko, 182 N.J. 44, 53 (2004) (citing State v. Grey, 147 N.J. 4, 11 (1996)). Inconsistent verdicts are permitted "'so long as the evidence was sufficient to establish guilt on the substantive offense beyond a reasonable doubt.'" Id. at 55 (quoting State v. Petties, 139 N.J. 310, 319 (1995) and State v. Kamienski, 254 N.J. Super. 75, 95 (App. Div. 1992)).

An inconsistent verdict will not, however, preclude reversal of the conviction "based on other defects in the criminal proceeding." Ibid. For example, in Grey, the Court reversed an inconsistent verdict because the record clearly established that the inconsistency was due to the trial court's erroneous instructions. 147 N.J. at 12-16.

In this case, defendant does not argue there was any error in the jury instructions on the offenses charged or any other defect in the trial court proceedings. Moreover, based on the testimony presented at trial and the legitimate inferences that could be drawn from the testimony, a jury could rationally find that defendant committed the endangering offense beyond a reasonable doubt. Therefore, even if the verdict on the endangering count was inconsistent with the verdict on the sexual assault charge, the conviction must stand.

Defendant argues, however, that he was not fully apprised of the charges against him. He contends he was not aware he could be convicted of endangering the welfare of a child after being acquitted of sexual assault because the State claimed that only one "touching" was involved. However, the indictment clearly placed defendant on notice that he could be found guilty on either count one or count two, or on both counts. The indictment referenced the

statutes for the charged offenses and set forth the essential elements of both offenses and the factual basis for the charges. Thus, defendant was fully apprised of the possibility that he could be found guilty of endangering the welfare of a child even if he was found not guilty of sexual assault.

III.

Defendant further argues that after the jury indicated it could not reach a verdict, the trial judge erred by instructing the jury to continue its deliberations. Defendant contends the judge should not have provided the instruction without first inquiring whether further deliberations would likely result in a verdict.

The record reflects that the jury began its deliberations at 12:15 p.m. on Thursday, April 4, 2013. The jury returned on Friday, April 5, 2013, and continued its deliberations. At the end of the day, the jurors sent the judge a note stating they were "unable to come to a verdict [that day]." The judge sent the jurors home and told them to return the following Monday morning.

The judge informed counsel that he intended to provide the jury with a Czachor charge when the jury returned on Monday. See State v. Czachor, 82 N.J. 392, 404-06 (1980) (modifying charge approved in Allen v. United States, 164 U.S. 492 (1896)). The assistant prosecutor objected, arguing the charge was unnecessary because the jurors indicated they would not reach a verdict that day,

not that they were at an actual impasse.  The judge agreed and did not give the charge.

The jury resumed its deliberations on Monday, April 8, 2013.  During their deliberations, the jurors sent a note to the judge stating, "After thorough discussions and many votes[,] the jury is unable to come to an [sic] unanimous decision."  The judge then instructed the jury as follows:

> . . . It is your duty as jurors to consult with one another and to deliberate with the view to reaching an agreement if you can do so without any violence to individual judgment.  Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.
>
> In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors [or] for the mere purpose of returning a verdict.
>
> You are not partisans.  You are judges; judges of the facts.  The jury is directed to resume deliberations.

Defendant did not object to the instruction.  The jury continued its deliberations and returned a verdict a few hours later.

Defendant argues, for the first time on appeal, that the judge erred by directing the jury to resume its deliberations after he received the jury's note stating that it was unable to come to a unanimous decision.  Defendant asserts

11

that the note was an unequivocal statement by the jury that it could not reach a unanimous verdict.

Defendant argues that even without a specific request to do so, the judge should have questioned the jurors to determine whether further deliberations would be fruitful. He asserts that the judge's instruction sent a message to the jury that nothing other than a unanimous verdict could be returned and led to the inconsistent verdict.

The Court addressed a similar argument in State v. Ross, 218 N.J. 130 (2014). In that case, the jury had been deliberating for about nine hours over three days. Id. at 138. During the first three days of their deliberations, the jurors had posed procedural questions and requested readbacks of testimony. Ibid.

On the fourth day of deliberations, the jury deliberated for an additional five hours and asked the judge to clarify the meaning of the term "reasonable doubt." Ibid. The following day, the jury sent the judge a note stating it was unable to reach a unanimous decision on any count. Ibid. Without objection by either party, the judge read the model jury charge based on Czachor. Ibid. (citing Model Jury Charge (Criminal), "Judge's Instructions on Further Jury Deliberations" (Jan. 14, 2013)) .

The Court stated that the trial court's decision as to whether to provide the jury with the Czachor charge "requires a careful analysis of the circumstances." Id. at 144. "When the jury communicates a deadlock, trial courts 'should be guided in the exercise of sound discretion by such factors as the length and complexity of trial and the quality and duration of the jury's deliberations.'" Ibid. (quoting Czachor, 82 N.J. at 407).

The trial court should exercise its discretion to ensure that the jury's verdict is free from "untoward interference from any source, including the court." Id. at 145 (quoting State v. Collier, 90 N.J. 117, 122 (1982)). If the difference of opinions between the members of the jury is "clearly intractable," the court should declare a mistrial. Ibid. (quoting State v. Valenzuela, 136 N.J. 458, 469 (1994)).

The Court held that the trial judge did not err by providing the jury with the Czachor charge. Ibid. The Court stated:

> The jury in this case did not signal an intractable divide that would warrant a declaration of a mistrial. Instead, [the jury] communicated that its effort to reach consensus on the issues had fallen short. The trial court properly refrained from any inquiry that could have compromised the confidentiality of the jury's deliberations, and instructed the jury to resume deliberations in accordance with the approved Czachor charge. As both parties agree, the trial court properly exercised its discretion in response to the jury's

13

> communication of an impasse by providing a <u>Czachor</u> charge and directing the jury to resume deliberations.
>
> [<u>Ibid</u>.]

In this case, the trial judge properly exercised his discretion by providing the jury with the <u>Czachor</u> charge. The matter was not complex, but the jury had been deliberating for less than two full days, and the jury's note did not indicate that the difference of opinion between the jurors was "clearly intractable." The jury's note merely indicated that the jurors had not been able to come to a unanimous decision. The judge did not err by providing the <u>Czachor</u> charge and instructing the jury to continue its deliberations.

We reject defendant's contention that the judge erred by failing to question the jurors to determine if further deliberations would be fruitful. In <u>State v. Figueroa</u>, 190 N.J. 219, 239 (2007), the jury had been deliberating for, at most, one day and sent the judge a note stating that it was "unable to unanimously agree on a verdict." The Court observed that when a jury indicates it is deadlocked, "'the appropriate course . . . is to inquire of the jury whether further deliberations will likely result in a verdict.'" <u>Id.</u> at 240 (quoting <u>Valenzuela</u>, 136 N.J. at 469).

The Court emphasized, however, that "it is not always necessary for the court to do so." <u>Ibid.</u> (citing <u>State v. Vergilio</u>, 261 N.J. Super. 648, 655 (App.

14

Div. 1993)).  The Court found that the judge did not err by failing to make the inquiry because the jury had only been deliberating a brief time.  Id. at 239-40.  The same conclusion applies in this case.

IV.

Defendant argues that the cumulative effect of the claimed errors denied him of his right to a fair trial and warrant reversal of his conviction.  We disagree.

"[W]here any one of several errors assigned would not in itself be sufficient to warrant a reversal, yet if all of them taken together justify the conclusion that defendant was not accorded a fair trial, it becomes the duty of this court to reverse."  State v. Orecchio, 16 N.J. 125, 134 (1954).  If a defendant alleges cumulative error but no error was prejudicial and the trial was fair, the theory of cumulative error does not apply.  State v. Weaver, 219 N.J. 131, 155 (2014).  Here, there was no prejudicial error and defendant was afforded a fair trial.  We therefore reject defendant's contention that his conviction should be reversed on the basis of cumulative trial errors.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1274-13T1