**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0186-18T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

RAUL ZARCO, a/k/a RAUL
RIVERA, ERICK ZARCO,
ERIC ZARCO, and POMPO,

    Defendant-Appellant.

_____

Argued telephonically May 4, 2020 –
Decided July 16, 2020

Before Judges Moynihan and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 15-09-1092.

Stephen W. Kirsch, Designated Counsel, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Stephen W. Kirsch, on the brief).

David M. Liston, Special Deputy Attorney General/ Acting Assistant Prosecutor, argued the cause for respondent (Christopher L.C. Kuberiet, Acting

Middlesex County Prosecutor, attorney; David M. Liston, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

Following a jury trial, defendant Raul Zarco appeals from his conviction of and sentence for three counts of first-degree robbery, N.J.S.A. 2C:15-1 (counts five, thirteen and fourteen); two counts of third-degree terroristic threats, N.J.S.A. 2C:12-3(b) (counts six and fifteen); two counts of third-degree theft by unlawful taking, N.J.S.A. 2C:20-3(a) (counts seven and sixteen); three counts of second-degree conspiracy to commit armed robbery, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:15-1 (counts eight, seventeen and twenty-six); one count of second-degree attempted robbery, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:15-1 (count twenty-five); and one count of fourth-degree possession of a weapon for an unlawful purpose – imitation firearm, N.J.S.A. 2C:39-4(e) (count twenty-seven).[1]

---

[1] The trial court dismissed two counts of first-degree robbery, N.J.S.A. 2C:15-1 (counts twenty-two and twenty-eight); two counts of third-degree terroristic threats, N.J.S.A. 2C:12-3(b) (counts twenty-three and twenty-nine); one count of fourth-degree theft by unlawful taking, N.J.S.A. 2C:20-3(a) (count thirty); and one count of second-degree conspiracy to commit armed robbery, N.J.S.A. 2C:5-2 and N.J.S.A. 15-1 (count thirty-one), in granting defendant's motion for judgment of acquittal after the State rested, R. 3:18-1. The jury found defendant

On appeal he argues:

POINT I

THE COURT IMPROPERLY REPLACED A JUROR FOR CAUSE AFTER THE JURORS HAD REPORTED THAT THEY HAD REACHED A PARTIAL VERDICT, INSTEAD OF TAKING THE PARTIAL VERDICT AND DECLARING A MISTRIAL ON UNRESOLVED COUNTS; CONSEQUENTLY, DEFENDANT'S CONVICTIONS MUST BE REVERSED AND THE MATTER REMANDED FOR RETRIAL.

POINT II

THE SENTENCE IMPOSED IS MANIFESTLY EXCESSIVE.

In his pro se supplemental brief, he adds:

POINT [I]

THE [TRIAL COURT] ERRONEOUSLY DENIED [DEFENDANT'S] MOTION TO SEVER THE INDICTMENT IN VIOLATION OF THE [FIFTH] AMENDMENT OF THE UNITED STATES

not guilty of four counts of first-degree robbery, N.J.S.A. 2C:15-1 (counts one, nine, eighteen and twenty); four counts of third-degree terroristic threats, N.J.S.A. 2C:12-3(b) (counts two, ten, nineteen and twenty-one); two counts of fourth-degree theft by unlawful taking, N.J.S.A. 2C:20-3(a) (counts three and eleven); two counts of second-degree conspiracy to commit armed robbery, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:15-1 (counts four and twelve); and one count of third-degree theft by unlawful taking, N.J.S.A. 2C:20-3(a) (count twenty-four).

3

CONSTITUTION & ARTICLE [I] PARAGRAPH 8 OF THE NEW JERSEY CONSTITUTION.

    A.    The Trial Court Erred By Denying [Defendant's] Motion To Dismiss The Indictment Because The Prosecutor Read Misleading Case . . . Law To The Grand Jury[] In Violation Of The [Fifth] Amendment Of The United States Constitution & Article [I] Paragraph 8 Of the New Jersey Constitution.

    B.    The Trial Court [S]hould [H]ave [D]ismissed [T]he [I]ndictment [B]ecause [T]he Grand Jury [W]as [N]ot [P]resented [W]ith [E]vidence [T]hat [N]egated [Defendant's] [G]uilt[] In Violation Of The [Fifth] Amendment Of The United States Constitution & Article [I] Paragraph 8 Of The New Jersey Constitution.

POINT [II]

THE [TRIAL COURT] ERRONEOUSLY DENIED [DEFENDANT'S] MOTION TO SEVER THE INDICTMENT BECAUSE HE WILL BE PREJUDICED IF ALL THE COUNTS ARE TRIED TOGETHER IN VIOLATION OF THE [SIXTH] AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE [I] PARAGRAPH 9 OF THE NEW JERSEY CONSTITUTION.

Because the trial court erred by replacing the dismissed juror after the jury announced they had reached a partial verdict on all but one count, on which they were deadlocked, we are compelled to reverse. In light of our decision, we need

4

not address defendant's sentencing argument. We will, however, briefly address defendant's pro se arguments.

I.

We glean from the record the facts that inform our review. During five days of trial testimony the State presented evidence, including testimony from defendant's codefendant who had pleaded guilty and agreed to testify for the State, that defendant participated in seven armed robberies. Having been charged the previous day, the jury began deliberations early on Thursday, March 15, 2018 after a single alternate and a foreperson were selected.[2]

Before lunch on the first day of deliberations, the jury made requests for: defendant's mug shot, surveillance video of the March 13, 2015 alleged attempted robbery and for the codefendant's statement (juror note C-2); and extra copies of an unidentified document or documents (juror note C-3) which, at 12:15 p.m., the trial court advised them would be provided when they returned from lunch at 1:30 p.m. After lunch, the jury requested: to be recharged on

---

[2] Neither the court nor the clerk noted the time deliberations commenced. We note from the transcriber's certification that the index of the CD she transcribed began at 9:30:55 and ended at 4:25:42.

A-0186-18T4

count twenty-three (juror note C-5)[3] and to see video from the January 30, 2015 alleged robbery, with the option to pause at certain points selected by the foreperson (juror note C-6). The trial court complied with most of the jury's requests, denying only the request for the mug shot and the codefendant's statement, both of which were not in evidence. The jury later requested clarification about three photographs the State introduced into evidence (juror note C-8). The trial court relayed to the jury that it would take some time to comply with the request and, without personally addressing the jurors, dismissed them until Tuesday, March 20, 2018.

The court addressed the jury's last request on the morning of March 20, beginning with a playback of testimony beginning at 9:27 a.m. and ending at 9:32 a.m. The trial court also complied with requests to view the videos of: the January 30, 2015 and the February 9, 2015 alleged robberies (juror notes C-10 and C-11), with playback commencing at 10:32 a.m. and ending at 10:52 a.m.; and later, for photographs and more video from the February 9, 2015 and March 11, 2015 alleged robberies (juror note C-12) with playback commencing at 11:40 a.m. and ending at 11:52 a.m.; and video from the January 31, 2015 alleged

---

[3] The record does not offer us any reason why the notes were not sequentially numbered. The index to exhibits lists only C-3, C-6 and C-8; the transcript does not mention the "C" exhibits not mentioned here.

robbery (juror note C-13) with playback commencing at 12:48 p.m. and ending at 12:51 p.m., at which time the jury was sent to lunch with deliberations to resume at 1:55 p.m.

Sometime after lunch,[4] the jury sent the court a note (juror note C-14) reading: "The jury has reached a verdict on all but one incident. The incident that we have not reached a verdict on, we are deadlocked. We are asking Your honor how you would like us to proceed." In response, the trial court instructed the jury, in accordance with State v. Czachor, 82 N.J. 392 (1980), to continue deliberating.

Another note followed,[5] stating Juror 4 needed to speak to the court (juror note C-15). After Juror 4 reported that her stepfather was gravely ill in the hospital and she had to tend to medical decisions regarding his care, the court, out of the juror's presence, told counsel:

> Okay. So, at least it wasn't bullying. All right. So [Juror 4] has a personal matter that she is very concerned about. We got a partial verdict. Now, I wouldn't even know how to go about telling [the jury],

---

[4] Again, the time of the note was not noted by the court or clerk. The transcriber's certification indicates the transcription of the first proceedings after the lunch break had a Courtsmart time stamp beginning at 3:24:30 and ending at 3:29:46.

[5] The transcriber's certification indicates the next Courtsmart time after 3:29:46 was 4:41:00.

A-0186-18T4

okay, let's hear the partial verdict. Even if I say, it's quarter to five, go home and come back tomorrow. She doesn't want to come back. So we have a problem at this point.

We would have to begin the deliberations all over again, with . . . the alternate, if we take her off.

Noting that the juror had "been [t]here [for] a month" during the trial, the court told counsel it was going to exercise discretion and release the juror, and "insert [the alternate] into the jury and we will have to start all over again."

The court also—with the consent of the assistant prosecutor and no response from defense counsel—addressed the jury, including Juror 4:

Okay. Ladies and gentlemen, I've got one more thing I need to ask you to do. All right. You've indicated that your deliberations have reached an impasse. Do you feel that further deliberations will be beneficial, or . . . do you feel that you have reached the point at which further deliberations would be futile? Can you return to the jury room, to confer, and advise me of your decision in another note. That's it. All right. Hear what I said?

. . . .

Bottom line, if you reached an impasse, and you don't feel that any further deliberations are going to be fruitful, please let me know. All right.

While waiting for the jury's response, the court told counsel, "[i]f they tell me that they can't go any further, then I'm gonna take the partial verdict." The

8 A-0186-18T4

jury, however, sent a note; as described by the court, the jury advised it felt "more deliberation [was] needed to reach a unanimous verdict on the outstanding count." Without further discussion, the court told the jury it was releasing them for the day because "it[ was] after 5:00 [p.m. and] the weather [was] bad," instructing them to return the next day at 8:30 a.m., weather permitting. Juror 4 remained after the other jurors were excused. The court excused her from continued service.

After Juror 4 departed, the following colloquy between the court and defense counsel immediately ensued:

> [DEFENSE COUNSEL]: Judge, for the record, on behalf of [defendant], we make an application to take the partial verdict, and declare the remaining counts hung. And declare those remaining counts as a mistrial.
>
> THE COURT: I understand what you're saying [defense counsel], but based upon all the information that I have, I can't make [the jury] come back with a partial verdict. All right. Once I send them back in and tell them to deliberate, if they don't come back and tell me they don't want to deliberate, and they want to give a partial verdict, I can take it, but I can't knock on the door and tell them, oh, we changed our mind, we'll take the partial verdict. Okay.
>
> I'm not upset with that. I know you have to do what you have to do, but I . . . want you to know that I'm not being obstinate, I just don't have the discretion to do something like that. Okay.

A-0186-18T4

The jury returned on Thursday, March 22, 2018.[6] The trial court, after telling the jury Juror 4 had been excused and that the alternate would take her place, instructed:

> As of this moment, you are a new jury. You must start your deliberations all over again. The parties have a right to a verdict reached by twelve jurors who have had the full opportunity to deliberate from start to finish. The alternate juror has no knowledge of any earlier deliberations. Consequently, the new deliberating juror must start over at the very beginning of deliberations.
>
> Each member of the original deliberating jury must set aside and disregard whatever . . . may have occurred and anything which may have been said in the jury room following . . . my instructions to you.
>
> You must give no weight to any opinion expressed by Juror . . . 4 during deliberations before that juror was excused.
>
> Now, together, as a new . . . jury, you must consider all evidence presented at trial as part of your full and complete deliberations until you reach your verdict.

Without further interaction with the court, the jury returned its verdict on all counts. The time of the verdict is not noted in the record, but the transcriber certified she prepared the "transcript of proceedings on Courtsmart with time

---

[6] Apparently, courts were closed on March 21, 2018, because of inclement weather.

stamp 11:47:20 to 11:54:03 and 2:12:00 to 2:36:40[.]" We discern, albeit without certainty, that the verdict was returned during the morning proceedings in that after the return there were further proceedings, with the court inquiring if the jurors saw defendant earlier that day in handcuffs. In any event, the verdict was returned the same day the jury was reconstituted.

The State argues the trial court properly exercised its discretion under Rule 1:8-2(d)(1) to substitute the alternate juror. Rule 1:8-2(d)(1) provides for the substitution of a juror if a juror is discharged because of an inability to continue. When there is a substitution of a juror, the court must "instruct the jury to recommence deliberations and shall give the jury such other supplemental instructions as may be appropriate." Ibid. The Rule "delicately balances two important goals: judicial economy and the right to a fair jury trial." State v. Ross, 218 N.J. 130, 146 (2014) (quoting State v. Jenkins, 182 N.J. 112, 124 (2004)). As compared to substituting jurors, "[d]eclaring a mistrial imposes enormous costs on [the] judicial system, from the expenditure of precious resources in a retrial to the continued disruption in the lives of witnesses and parties seeking closure." Jenkins, 182 N.J. at 124.

Alternatively, the State contends if the court did err, defendant, by waiting until Juror 4 was excused to request a partial verdict be taken, invited error, or that any error committed was, absent objection, not plain error. See R. 2:10-2.

The trial court failed to follow our Supreme Court's direction to take a partial verdict before excusing a juror after the panel had indicated it reached a partial verdict. As such, its decision to excuse the juror, and instruct the jury to continue deliberations anew with the alternate juror "inexplicably departed from established policies [and] rested on an impermissible basis," and was thus an abuse of discretion. Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002); see also State v. R.Y., ___ N.J. ___, ___ (2020) (slip op. at 18).

Notwithstanding the authority of the trial court to substitute jurors in some instances, see Ross, 218 N.J. at 146-47, 151, the Court made clear "if a partial verdict has been rendered, or the circumstances otherwise suggest that jurors have decided one or more issues in the case, the trial court should not authorize a juror substitution, but should declare a mistrial," id. at 151. Contrary to the State's argument that by using the term, "should," the Court did not mandate that a partial verdict be taken and a mistrial declared, and that the trial court still had discretion to substitute for a dismissed juror, the Court—in a decision that the State in its merits brief conceded presented a "'juror substitution issue,' which is

12

similar to the issue presented . . . in this case," and which both parties at oral argument requested that we review prior to deciding this case—recognized the "rich and fulsome jurisprudence on the issue of juror substitution in the face of a jury having reached a partial verdict." State v. Horton, ___ N.J. ___, ___ (2020) (slip op. at 3). The Court held, in those circumstances: "Quite simply, substitution is impermissible. The proper course is for the trial court to take the partial verdict and declare a mistrial on the open counts." Ibid.

The Court harkened to its prior decisions, instructing:

> "[W]hen the circumstances suggest a strong inference that the jury has affirmatively reached a determination on one or more factual or legal issues the trial court should not substitute an alternate for an excused juror." [Ross, 218 N.J. at 151]. We have "h[e]ld that substitution of a juror after the return of partial verdicts for the purpose of continuing deliberations in order to reach final verdicts on remaining counts [constitutes] plain error." State v. Corsaro, 107 N.J. 339, 354 (1987). "[I]f a partial verdict has been rendered, or the circumstances otherwise suggest that jurors have decided one or more issues in the case, including guilt or innocence, the trial court should not authorize a juror substitution, but should declare a mistrial." Ross, 218 N.J. at 151.
>
> [Ibid. (first, third, fourth and fifth alterations in original).]

As such, the trial court committed plain error by failing to take a partial verdict and declare a mistrial on the unresolved count. R. 2:10-2; see also State

v. Macon, 57 N.J. 325, 336 (1971).  The trial court's decision to allow continued deliberations leaves the same quandary the Court noted in Horton:

> [W]e cannot know whether the jury will "start anew" with the entry of a substitute juror and discard their views simply because there is a new juror amongst them.  Nor can we know if the new juror will exercise independence or simply go along with the opinions of the existing jurors.  We cannot know or speculate whether the replacement juror was a "full participant[] in the mutual exchange of ideas."
>
> [Slip op. at 4 (second alteration in original).]

We, therefore, reverse and remand to the trial court for a new trial.

## II.

We would typically address defendant's pro se arguments that the trial court erred in denying his pretrial motion to dismiss the indictment and to sever the counts (counts eighteen, nineteen, twenty, twenty-one, twenty-two, twenty-three and twenty-four) pertaining to the alleged March 11, 2015 robbery and the counts (counts twenty-five, twenty-six and twenty-seven) pertaining to the March 13, 2015 alleged attempted robbery from the other alleged crimes.  We, however, decline to fully address those issues.

Defendant argues the indictment should have been dismissed because the State, in presenting the matters to the grand jury, "read misleading case law to

14

the grand jury," and "because the [State] did not present the grand jury with . . . evidence that negated his guilt."

As to the former argument, defendant did not include grand jury transcripts in the appellate record, preventing any review of the assistant prosecutor's instructions to the grand jury. R. 2:5-4(a); see also R. 2:5-3(a). And, the trial court's decision in which it describes the challenged instruction as "an abundance of extra stuff, which wasn't necessary but nonetheless, nothing was inaccurate," does not inform our review. Although the court noted the statutory definition of "deadly weapon" was amended in 1982, "[a]nd notwithstanding what [the assistant prosecutor] said about [case law], that is the key to the viability of this indictment," the court did not adequately explain its reasons for denying the motion to dismiss. R. 1:7-4(a).

As the State correctly recognized in its merits brief, defendant does not proffer any exculpatory evidence to support his latter argument, but argues the evidence presented to the grand jury was insufficient to support its return. At oral argument, defense counsel told the trial court there was "nothing in the grand jury [presentation] which even indicates how [the codefendant who gave a statement to authorities informing that defendant alone committed the March 11, 2015 robbery] knows about this[.]"

Defendant did not include the codefendant's statement to authorities in the appellate record. In its oral decision, the trial court reasoned defendant and the codefendant "were robbing partners for quite some time, [so] one would presume" or that a rational inference could be drawn that defendant told the codefendant about the robbery. When defense counsel countered that there was no evidence presented to the grand jury to establish that inference or that the codefendant knew about the robbery, the trial court responded: "That[ would] be a pretty good cross-examination. That doesn't say anything about the sufficiency of the indictment. No. Your motion to dismiss the indictment is denied. . . . [T]here's nothing wrong with that indictment." Without the grand jury transcript, the codefendant's statement and a sufficient explanation for the trial court's ruling, R. 1:7-4(a), we are unable to analyze the sufficiency of the evidence.

In his supplemental brief, defendant also argues "[c]ounts eighteen [through] twenty-four pertaining to the March 11, 2015 robbery allegedly involving only [defendant] should be [severed]." He adds, "[c]ounts twenty-seven, twenty-six, and twenty-five pertaining to the attempted robbery . . . on March 13, 201[5] should be [severed]."

16

Defendant's argument disregards the trial court's dismissal of some counts and the jury's not guilty verdict on all remaining counts related to the March 11 robbery, rendering that issue moot. See State v. Davila, 443 N.J. Super. 577, 584 (App. Div. 2016) (stating that an issue is deemed "moot when 'the decision sought in a matter, when rendered, can have no practical effect on the existing controversy'" (quoting Greenfield v. N.J. Dep't of Corr., 382 N.J. Super. 254, 257-58 (App. Div. 2006))). As to the added argument, we are unable to address the denial of defendant's motion to sever the counts related to the March 13 incidents.

The trial court denied defendant's severance motion, finding the seven separate incidents on which the indictment counts were based were "parts of a common plan or scheme that, and [the codefendant] brings that together, that these two were on a robbery spree in Woodbridge and Perth Amboy beginning January and finally ending in March" 2015. Again, the codefendant's statement is not included in the record, and the trial court's terse oral decision is insufficient for us to determine if the court mistakenly exercised its discretion in denying the motion, see State v. Coruzzi, 189 N.J. Super. 273, 297 (App. Div. 1983), especially considering we see no mention by the trial court that it considered prejudice to defendant in that analysis, State v. Moore, 113 N.J. 239,

273 (1988) ("[W]here the evidence establishes that multiple offenses are linked as part of the same transaction or series of transactions, a court should grant a motion for severance only when [a] defendant has satisfied the court that prejudice would result.").

The trial court also considered the severance issue under N.J.R.E. 404(b). Under that analysis, the appropriate inquiry is whether, if the crimes were tried separately, evidence of the severed offenses would be admissible at the trial of the remaining charges. State v. Chenique-Puey, 145 N.J. 334, 341 (1996). If the evidence would be admissible at both trials, the trial court should not sever the charges, because the "defendant will not suffer any more prejudice in a joint trial than he would in separate trials[.]" Coruzzi, 189 N.J. Super. at 299. To evaluate whether evidence of a crime would be admissible at a trial on other crimes, and thus whether severance should be denied, the motion court must utilize the same standard used to determine whether other-crime evidence is admissible under N.J.R.E. 404(b). Chenique-Puey, 145 N.J. at 341.

Of course, the well-established test for determining admissibility under that Rule requires a trial court to determine if the proponent established each of the four prongs, see State v. J.M., 225 N.J. 146, 158 (2016), set forth in State v. Cofield, 127 N.J. 328, 338 (1992):

1. The evidence of the other crime must be admissible as relevant to a material issue;

2. It must be similar in kind and reasonably close in time to the offense charged;

3. The evidence of the other crime must be clear and convincing; and

4. The probative value of the evidence must not be outweighed by its apparent prejudice.

[(quoting Abraham P. Ordover, Balancing The Presumptions Of Guilt And Innocence:  Rules 404(b), 608(b), And 609(a), 38 Emory L.J. 135, 160 (1989)).]

Analyzing the Cofield factors, the trial court concluded "the issue of identity obviously comes up . . . , which is obviously a material issue and integrally related to common plan or scheme and the v[e]racity of what [the codefendant] has to say."  And, recognizing that the State was required to prove defendant's specific intent to commit the March 13 attempted robbery where he and the codefendant were arrested outside the store, the court noted the pair's dress, including a ski mask, and "what they were doing as the [police] radio car pulled up" to the store, and "that common plan or scheme put[] into context that" the pair took a substantial step to commit the robbery that day.  Ostensibly, that was the court's attempt to link the attempted robbery to the others charged in the indictment.  The court continued:

Indeed, in that count, given [defendant's] apparent reaction to the approach of the [police] radio cars, [the] State may very well be entitled to a flight charge. [Defense] would argue that it was mere departure; [the] State's going to argue that it was flight and consciousness of guilt. And a jury would have to decide that if it was, whether it was mere departure or flight.

The trial court again contravened Rule 1:7-4(a). It did not delineate what evidence of other crimes it found to be clear and convincing. Nor did the court weigh the probative value of the evidence against the potential prejudice. We are thus unable to determine if the trial court abused its discretion in denying defendant's motion to sever the March 13, 2015 robbery from the others.

We also observe, in light of the court's dismissal of and the jury's not guilty verdict on counts related to four of the seven incidents, the calculus of the Cofield analysis has changed.

Absent a sufficiently established record, we cannot and do not determine defendant's pro se arguments relating to his pretrial motions to dismiss the indictment and for severance of certain counts. Reversed and remanded for a new trial on the surviving counts. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0186-18T4